Steven C. Jacobs *vs.* Yamaha Motor Corporation, U.S.A.

Middlesex. March 6, 1995. - May 11, 1995.

Present: Wilkins, Abrams, Nolan, & Greaney, JJ.

*Consumer Protection Act*, Availability of remedy, Consumer, Warranty, Unfair act or practice. *Sale*, Warranty. *Evidence*, Telephone bill. *Practice, Civil*, Amendment, Instructions to jury.

A manufacturer of consumer goods may be held liable to a consumer-purchaser for a breach of an implied warranty of merchantability, under the explicit language of G. L. c. 106, §§ 2-316A and 2-318. [327-330]

Where a jury concluded that the manufacturer of a motorcycle had breached its implied warranty of merchantability with respect to a consumer's purchase of a certain motorcycle, the judge was warranted in the circumstances in concluding on the related G. L. c. 93A claim that there had been a wilful violation of the Consumer Protection Act by the manufacturer which justified trebling the damages. [331]

Evidence at the trial of a claim for breach of an implied warranty of merchantability supported the jury's finding of breach. [331]

The judge at a civil trial did not err in instructing the jury that, in the circumstances, with respect to a claim for breach of an implied warranty of merchantability of a motorcycle, the vehicle's dealer and the manufacturer could be viewed as one. [331]

Admission in evidence of certain general communications from a motorcycle manufacturer regarding a certain model and certain communications made by the purchaser of such a vehicle to the manufacturer was not error at the trial of the purchaser's claim for breach of the implied warranty of merchantability. [331-332]

At the trial of a claim for breach of an implied warranty of merchantability, the judge properly allowed the plaintiff to amend his complaint after trial to include a claim for violation of G. L. c. 93A, where there was no likelihood that the defendant was unfairly prejudiced. [332]

No error appeared in the judge's instructions to the jury in an action against the manufacturer of consumer goods for breach of the implied warranty of merchantability. [332]

CIVIL ACTION commenced in the Superior Court Department on June 1, 1984.

The case was tried before *Vieri Guy Volterra*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Geoffrey D. Wyler* (*Thomas Edward Thompkins, Jr.*, with him) for the defendant.

*Michael J. Tremblay* for the plaintiff.

WILKINS, J. On April 13, 1983, the plaintiff purchased a new Yamaha motorcycle for $5,162 from a Yamaha dealer in Hudson. In connection with the sale, the defendant Yamaha expressly warranted that the motorcycle was "free from defects in material and workmanship" and, to the extent permitted by law, disclaimed all other warranties, express or implied.

The plaintiff had many problems with the motorcycle, which was a new Yamaha model that year. The warranty agreement provided that any authorized Yamaha dealer would replace any defective parts and would make any repairs necessary because of faulty workmanship or material. In the first year of his ownership, the plaintiff brought the motorcycle back to the dealer fifteen times. During the first two years of production, Yamaha issued numerous service bulletins describing problems with the model. On April 10, 1984, the plaintiff took the motorcycle into the dealer for the fifteenth time. One week later, on April 17, he discovered that the engine was being completely rebuilt. He told the dealer that he did not want the motorcycle back.

The Yamaha warranty agreement directed that, if the motorcycle needed warranty service, the buyer should take the vehicle to an authorized Yamaha dealer. If a problem arose regarding warranty, Yamaha directed the plaintiff to communicate with the owner of the dealership. "Since all warranty matters are handled at the dealer level, this person is in the best position to help you." If the buyer was still not satisfied, the warranty agreement instructed the buyer to write or call Yamaha's warranty/customer relations department in California.

On April 17, 1984, the plaintiff called the Yamaha warranty/customer relations department in California from his place of employment and stated that he wanted his money back. He was told that someone would call him back shortly. When no one did, the plaintiff called Yamaha again that day from his home and demanded his money back. Telephone bills corroborate that the plaintiff made these two telephone calls. No Yamaha representative communicated with the plaintiff before this action was commenced. A few days later, counsel for the plaintiff took action on his behalf, including the sending of a G. L. c. 93A demand letter to the dealer. This action was commenced on June 1, 1984, against only the dealer. Yamaha was not named as a party until the complaint was amended in July, 1986.

We need not consider the procedural history of this case in detail. It is agreed that the dealer went out of business. The dealer was not involved in the trial and is not a party to this appeal. The case was tried in the Superior Court before a jury, the judge reserving for his decision what he believed was a G. L. c. 93A claim against Yamaha. The jury returned a special verdict in which they stated that Yamaha did not breach any express warranty but that Yamaha's express warranty failed of its essential purpose as a result of the dealer's inability to repair the motorcycle after a reasonable number of attempts. The jury also answered that Yamaha breached its implied warranty of merchantability and its implied warranty of fitness for a particular purpose. They answered that the plaintiff justifiably revoked his acceptance of the motorcycle.

The judge presented the jury a single question on damages, apparently assuming that the measure of damages was the same under all theories of liability. The jury answered that $8,500 would fairly compensate the plaintiff for his damages. Defense counsel had objected to the form of the special question on damages before the verdict slip was given to the jury, arguing that the elements of damage were different for the various theories of liability. Under the view we take of this case, which bases liability on the judge's determi-

nation under G. L. c. 93A, we need not decide whether the form of the special verdict and the jury instructions on damages were prejudicial. We transferred here Yamaha's appeal from the judgment entered in the plaintiff's favor. We affirm.

Before discussing the questions of law that relate to the result we reach, we must set forth the circumstances concerning the plaintiff's G. L. c. 93A claim. The complaint on which the case was tried contained counts against Yamaha as follows: a count for breach of express warranty; a count for breach of an implied warranty of merchantability; and a count for revocation of acceptance. There was a count for violation of G. L. c. 93A against the dealer but no such claim against Yamaha.

Before trial started the judge stated that he was reserving the c. 93A issues for himself and that the jury verdict would only be advisory on that count. Yamaha's counsel said nothing. In the midst of the trial the judge extensively explained to the jury what the consumer protection act (G. L. c. 93A) was and that he would be deciding the G. L. c. 93A issues. Yamaha's counsel again said nothing.[1] After the evidence was complete, the judge again referred to his role concerning the c. 93A claim. Once more, Yamaha's counsel said nothing. After the jury had been excused, the judge asked counsel what should be done about the G. L. c. 93A claim. Only then did Yamaha's counsel direct the judge's attention to the fact that the complaint contained no claim against Yamaha under G. L. c. 93A. The judge subsequently allowed the plaintiff to amend the complaint to include a claim against Yamaha in the G. L. c. 93A count.

The judge found against Yamaha on the G. L. c. 93A claim, awarded damages of $8,500, which, because the practice was wilful and knowing, he tripled pursuant to G. L. c. 93A, § 9 (3) (1992 ed.). He found that the motorcycle had had material defects that Yamaha's dealer had failed to

[1]Defense counsel's motion for a directed verdict filed at that time stated that the G. L. c. 93A count did not apply to Yamaha. Of course, the G. L. c. 93A claim did not involve the jury, and the motion for a directed verdict was irrelevant to that claim.

cure. He ruled that, in the circumstances, Yamaha's conduct was an unfair and deceptive practice because "Yamaha made the promises, undertook the obligation which it delegated to the dealer, and upon the dealer's failure to effectuate the promises, it walked away from its responsibilities."

If Yamaha properly may be held liable for a breach of an implied warranty of merchantability, the circumstances clearly justify the judge's finding of a violation of G. L. c. 93A and his determination of damages. The question is whether a manufacturer-remote seller of consumer goods may be held liable to a consumer-buyer for breach of an implied warranty of merchantability. We conclude that Yamaha may be held liable to the plaintiff for breach of an implied warranty of merchantability. By so concluding, we do not reach the question whether the case properly went to the jury on any other theory of liability.[2]

Yamaha's attempted disclaimer of implied warranties was ineffective. Any language by which a manufacturer of consumer goods seeks to exclude or modify an implied warranty of merchantability or of fitness for a particular purpose, or to limit the consumer's remedies for breach of those warranties, is unenforceable. G. L. c. 106, § 2-316A (1992 ed.). Consumer goods for the purposes of art. 2 of the Uniform Commercial Code (UCC) are the same as in art. 9. See G. L. c.

---

[2]We need not, therefore, decide whether a person in the plaintiff's position would be entitled under G. L. c. 106, § 2-608 (1992 ed.), to revoke acceptance of the motorcycle against Yamaha, a remote seller. The majority view in this country under § 2-608 of the Uniform Commercial Code (UCC) is that a buyer may not revoke acceptance against a remote seller. See 1 J.J. White & R.S. Summers, Uniform Commercial Code § 8-4, at 423 (3d ed. 1988 & Supp. 1994) ("The cases generally hold that a buyer may only revoke acceptance of goods as against his own seller"). A reasonable argument can be made that at least a consumer whose seller is insolvent should be entitled to a revocation remedy against the manufacturer of goods. Monserud, Rounding out the Remedial Structure of Article 2: The Case for a Forced Exchange Between a Buyer and a Remote Seller, 19 U. Dayton L. Rev. 353, 426-427 (1994). It appears that the revision of art. 2 of the UCC now being developed will give attention to the right of a buyer to revoke acceptance by giving notice to the remote seller and will state the remote seller's obligations in such a case. See J. Braucher, Overview of Proposed Products Liability Changes, C. 965 ALI-ABA 575, 579 (1994).

106, § 2-103 (3) (1992 ed.). Under G. L. c. 106, § 9-109 (1992 ed.), consumer goods are those "bought for use primarily for personal, family or household purposes." The plaintiff's motorcycle is in that category.[3]

A warranty that goods are merchantable was implied in the sale of the motorcycle. G. L. c. 106, § 2-314 (1992 ed.). Yamaha argues, however, that such a warranty was extended in this case only by the seller, the defunct dealer from which the plaintiff purchased the motorcycle. Section 2-316A, which we have already discussed, denies enforcement of exclusions or limitations of any implied warranty of merchantability attempted "by a seller *or manufacturer of consumer goods*" (emphasis added). The implication of that language is that a manufacturer of consumer goods makes an implied warranty of merchantability to the consumer. More explicit is the language of G. L. c. 106, § 2-318 (1992 ed.), that "[l]ack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer . . . of goods to recover damages for breach of warranty, express or implied . . . if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use . . . the goods." This provision, which is at least as broad as the broadest alternative proposed for § 2-318 of the UCC, on its face invalidates Yamaha's argument.[4] Although

---

[3]We need not consider any aspect of § 2-316 concerning the limitation or modification of warranties. Indeed, § 2-316A expressly states that § 2-316 is inapplicable to sales of consumer goods. Also because of § 2-316A, we need not consider whether, pursuant to G. L. c. 106, § 2-719 (1992 ed.), there was a failure of the remedy (repair) which Yamaha offered for any breach of its express warranty which failure would allow the plaintiff to assert remedies available under the UCC (in spite of the purported limitations of remedies stated in the warranty agreement).

[4]The UCC provides three alternative provisions for § 2-318 ("Third Party Beneficiaries of Warranties Express or Implied"). 1A U.L.A. 556-557 (Master ed. 1989). Each successive alternative provides a wider class of persons to whom a seller's warranty is extended. The alternatives are:

"ALTERNATIVE A

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person

the alternatives for § 2-318 of the UCC are largely directed toward defining the class of persons who properly could maintain a tort-based breach of warranty action for personal injuries, the Massachusetts form of § 2-318 is not limited to recovery for personal injury but rather refers to "damages" for breach of warranty.

Authority elsewhere recognizes the right of a consumer under UCC Alternative C to recover against a manufacturer or remote seller for breach of warranty causing damage other than personal injury. See Stallworth, An Analysis of Warranty Claims Instituted by Non-Privity Plaintiffs in Jurisdictions That Have Adopted Uniform Commercial Code Section 2-318 (Alternatives B & C), 27 Akron L. Rev. 197, 215-216 (1993); *Milbank Mut. Ins. Co.* v. *Proksch*, 244 N.W.2d 105, 107-109 (Minn. 1976); *Dalton* v. *Stanley Solar & Stove, Inc.*, 137 N.H. 467, 470 (1993) (statute equivalent to Alternative C of UCC § 2-318 "removed both horizontal

---

may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

"ALTERNATIVE B

"A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

"ALTERNATIVE C

"A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends."

The Massachusetts form of § 2-318 goes beyond Alternative C. See Stallworth, An Analysis of Warranty Claims Instituted by Non-Privity Plaintiffs in Jurisdictions That Have Adopted Uniform Commercial Code Section 2-318 (Alternatives B & C), 27 Akron L. Rev. 197, 236 (1993). "For example, it states that lack of privity is not a defense in a breach of warranty action against a manufacturer, seller, supplier or lessor." *Id.* Only Alternative C concerns more than personal injury, extending rights to nonprivity plaintiffs who have sustained property damage or economic loss. *Id.* at 203.

and vertical privity as defenses to implied warranty claims"); *Cundy* v. *International Trencher Serv., Inc.*, 358 N.W.2d 233, 240 (S.D. 1984). See also *Costa* v. *Volkswagen of Am.*, 150 Vt. 213, 215 n.1 (1988) ("However, Massachusetts has expressly eliminated the requirement of privity in actions between manufacturers or suppliers and the ultimate purchasers of their products," citing G. L. c. 106, § 2-318). Contra *Nebraska Innkeepers, Inc.* v. *Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 129 (Iowa 1984) (Alternative C's reference to a person "who is *injured*" means physical harm to the plaintiff or his property and not economic loss [emphasis in original]). We have already noted that by contrast the Massachusetts version of § 2-318 eschews the words "injury to the person" in UCC Alternative C and refers to "damages."

The fact that § 2-318 was enacted with a focus on remedies for personal injuries caused by a breach of warranty (see *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 108-109 [1989]), should not inhibit the independent development of the law concerning warranties extended to the buyer of defective goods. Contract-based warranty claims involving commercial transactions may generally call for different treatment than tort-based warranty claims. See Bartenstein, Recent Developments in Commercial Warranty Law, 35 B.B.J. 4, 6 (May/June 1991).[5] However, contract-based warranty claims of buyers of consumer goods themselves deserve separate consideration because of special legislation affecting them. We respond to this special legislative treatment by implementing the purposes of § 2-316A and § 2-318 and recognizing the right of a buyer of consumer goods to sue the manufac-

---

[5]This appropriate distinction between contract-based warranty claims and tort-based warranty claims led this court in *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103 (1989), to apply the statute of limitations of art. 2 that concerned contract-based claims and not the statute of limitations that had been inserted in § 2-318 to deal with tort-based claims.

turer directly for a breach of an implied warranty of merchantability.[6] We conclude that a buyer of consumer goods has the right to maintain an action for breach of the implied warranty of merchantability against the manufacturer of that product. Because of this breach of warranty and other facts found by the judge, the judge's conclusion of law that Yamaha engaged in unfair practices in violation of G. L. c. 93A is correct.

Yamaha's other challenges to the judgment require little discussion. (1) The evidence of the plaintiff's numerous problems with the motorcycle amply supports the jury's finding that Yamaha breached its implied warranty of merchantability. G. L. c. 106, § 2-314. (2) Because Yamaha told the plaintiff to take his warranty problems to the Yamaha dealer, the plaintiff's dealings with the authorized Yamaha dealer were relevant to issues such as the deficiencies of the motorcycle, notice, and repair bills received, and the judge did not err in telling the jury that in the circumstances, at least concerning the implied warranty of merchantability, the dealer and Yamaha could be viewed as one. (3) The admission of general communications from Yamaha concerning the model of motorcycle that the plaintiff purchased was discretionary with the judge. See *Liarikos* v. *Mello,* 418 Mass. 669, 672 (1994). (4) The judge did not err in admitting evidence of the plaintiff's calls to Yamaha, including the plaintiff's telephone bill. This evidence tended to prove notice to Yamaha of the breach of warranty, and Yamaha's lack of response was relevant to the question of unfairness under G. L. c. 93A. The judge was entitled to

---

[6]The distinction between tort-based claims resulting from a defective product and contract-based claims based on a breach of warranty was perhaps blurred by this court's decision in *Swartz* v. *General Motors Corp.,* 375 Mass. 628, 630 (1978), to turn to § 2-318 to provide a tort remedy for an injury caused by a defective product, rather than to establish freestanding principles of tort liability based on Restatement (Second) of Torts § 402A (1965). We were led to this approach, probably unavoidably, by the Legislature's expansive amendments of § 2-318. St. 1971, c. 670, § 1. St. 1973, c. 750, § 1. St. 1974, c. 153. See *Back* v. *Wickes Corp.,* 375 Mass. 633, 639-640 (1978).

conclude that Yamaha's claim that the telephone bill came as an unfair surprise lacked record support. (5) In the circumstances, the judge did not abuse his discretion in allowing a posttrial amendment pursuant to Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974), to include Yamaha in the G. L. c. 93A count. The issues were fully aired at trial, and we see no likelihood that Yamaha was unfairly prejudiced by the timing of the amendment. Yamaha's counsel, whose silence on the subject appeared to acknowledge the presence of a G. L. c. 93A claim against Yamaha, should have been more forthcoming when the judge discussed the G. L. c. 93A claim before and during trial. Against Yamaha, which had no place of business or assets in the Commonwealth, no demand was necessary under G. L. c. 93A. See G. L. c. 93A, § 9 (3); *Burnham* v. *Mark IV Homes, Inc.*, 387 Mass. 575, 583 n.13 (1982). (6) The judge was correct in principle in instructing the jury that Yamaha could not hide behind the ineffectiveness of its dealer. The words "hide behind" perhaps should have been replaced by words of a less critical quality, but they were not improper in a case in which Yamaha was contending that it, in effect, as a remote seller, was not part of the problem. (7) We need not discuss other issues that do not bear on the grounds on which we decide this appeal.

The judgment is affirmed. The plaintiff is entitled under G. L. c. 93A to attorney's fees and expenses in connection with this appeal.

*So ordered.*