Fabricant, J.
This action arises from personal injuries allegedly suffered by the plaintiff, Timothy Bergstresser, on June 9, 1997, when his automobile tire exploded while he was inflating it with an air hose at Charles’s Oak Square Mobil station, located at 631 Washington Street in Brighton. Bergstresser sued Charles T. Cooke, the franchisee of the station, and Charles’s Oak Square Mobil, Inc. (“Oak Square”). These defendants then joined the franchisor, Mobil Oil Corporation (“Mobil”), asserting third-party claims for indemnification and contribution. Mobil counterclaimed against Oak Square and Cook, seeking contractual indemnification pursuant to the franchise agreement, damages for alleged breach of a contractual provision regarding insurance coverage, and contribution. Mobil now moves for summary judgment on the third-party claims, and as to liability on its own counterclaims. For the reasons that follow, Mobil’s motion will be allowed.
BACKGROUND
The summary judgment record establishes the following facts as undisputed.
On May 17, 1995, Charles T. Cooke, identified as “dealer,” and Mobil Oil Corporation entered into an agreement entitled “PMPA Motor Fuels Franchise Agreement for OG&L Dealers” for the period from October 7, 1995 through October 31, 1998.[1] Article I of the agreement outlines the nature of the relationship it establishes and of the rights and obligations exchanged, as follows:
By this Agreement Mobil and Dealer hereby establish a “franchise" and a “franchise relationship” as defined by the Petroleum Marketing Practices Act . . . Mobil hereby grants Dealer the right to (1) use and occupy the Marketing Premises in connection with the sale and distribution of MOBIL brand motor fuel . . . and (2) use Mobil’s trademarks . . . Dealer hereby (1) leases the Marketing Premises .. . and (2) agrees to purchase MOBIL brand motor fuel from Mobil for retail sale at the Marketing Premises.
Article III, entitled “Lease Provisions,” governs the lease of the “Marketing Premises” at 631 Washington Street in Brighton. It provides that Mobil leases that location to Dealer, “including the improvements and equipment now or hereafter placed on the Marketing Premises as listed on the attached schedule A . . .” Article III C of the agreement provides, in type as shown, that:
DEALER SHALL ACCEPT THE MARKETING PREMISES AND SCHEDULE A EQUIPMENT IN THEIR PRESENT CONDITION, AS IS, WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED, AS TO THEIR CONDITION OR FITNESS FOR ANY PURPOSE. Dealer shall not hold Mobil responsible for any defect in or change in conditions affecting the Marketing Premises or for any damage to the Marketing Premises except as provided in Article VII, Paragraph A.
Article III F, entitled “Safety," includes the requirement that the “Dealer shall (1) not maintain or permit any condition on the Marketing Premises which is unsafe or presents a risk of harm to anyone or anything on the Marketing Premises.”
Article VII of the agreement governs “Maintenance Obligations.” Article VII A provides that Mobil shall “repair or replace those items listed on Schedule B which Mobil determines are necessary to be repaired or replaced to keep them in good operating condition” due to specified causes, but that “Mobil’s obligation to repair shall not arise until: (1) Dealer notifies by telephone Mobil’s Maintenance Center that the item in question is not in good operating condition,” and Mobil determines that the repair is necessary and arises from the causes provided. Article VIIB imposes on the Dealer the general obligation to “maintain the Marketing Premises in good, safe and operating condition” and to “promptly notify Mobil if Dealer believes any item which is Mobil’s responsibility under Article VII, Paragraph A, is not in good operating condition.”
Article XII of the agreement governs “Allocation of Risk.” Article XII C, entitled “Indemnity,” provides:
Dealer shall defend, indemnify and hold harmless Mobil . . . from and against each and every loss, cost, claim, obligation, damage, liability, payment, fine, penalty, cause of action, lien or expense including but not limited to reasonable attorneys fees and other litigation expense, which results from or arises out of or is attributable in any way to any of the items listed below, regardless of whether caused in part by the negligence of Mobil, but not which results from Mobil’s sole negligence.
There follows a list of nine items, among which are “(3) Any failure by Dealer to notify Mobil of the need for repairs or any failure by Dealer to otherwise comply with Dealer’s maintenance obligations," “(4) Death, personal injury, property damage or any other injury or claim arising out of Dealer’s action or inaction in the use, occupancy, operation or maintenance of the Marketing Premises,” and “(9) Any failure by Dealer to obtain or keep current the amounts and types of insurance required by this Agreement or to comply with the terms and conditions of the insurance obtained.” Article XIIG (1) requires the dealer to maintain specified insurance coverage. Among the coverages required are “(1) garage-keeper’s legal liability insurance . . . with Mobil named as an additional insured (unless the configuration of the improvements at the Marketing Premises is one having no service bays or car wash, in which event, garagekeepers legal liability insurance is not required),”[2] and “(2) garage liability insurance . . . with Mobil named as an additional insured, which includes coverage for (a) contractual liability; (b) the sale of food and beverages . . . and (c) *468 vehicles owned or operated in the course of Dealer’s business.”
Schedule A to the agreement lists equipment included in the lease, “for which the Dealer acknowledges receipt.” The following language appears in capital letters above the list of items: “DEALER ACCEPTS THE IMPROVEMENTS AND EQUIPMENT IN THEIR PRESENT CONDITION, AS IS, WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED, AS TO THEIR CONDITION OR FITNESS FOR ANY PURPOSE.” Included on the list is one “air and water dispenser,” further identified as “tower air (wall or pole mntd).” Immediately following Schedule A is Schedule B, headed “Supply and Maintenance of Service Station Improvements, Equipment, and Accessories.” Under the category of “Building Equipment,” Schedule B lists “air compressor.” Next to that item, under the heading “replacement and/or maintenance by,” appears “Mobil” followed by “Dealer — drain water, change oil, maintain oil level, repairs due to lack of oil.” Among “Island and Yard Equipment,” Schedule B lists “hoses” and “hose,” with “Dealer” designated as responsible for replacement and/or maintenance, and “air and water islanders, towers, reels and wells,” with Mobil designated as responsible for replacement and/or maintenance. By a subsequent amendment[3] to the agreement, the parties substituted Schedule B-l for Schedule B; Schedule B-l, similarly headed “Repair/Replacement Responsibility and Discretion - aiy/Non Discretionary Guideline for Service Station Maintenance,” lists, “air compressor” among “Service & Dispensing Equipment,” with Dealer listed as having repair responsibility, and Mobil listed as having replacement responsibility. In the same category, trader “Dispensers,” Schedule B-l lists “hoses, nozzles, swivels, retractors, breakaway cables, and price signs required by law,” with Dealer listed as having both repair and replacement responsibility.
Cook maintained insurance with American Hardware Mutual Insurance Company. The coverage selections page shows “garage liability" and “garage liability other than auto,” but does not list Mobil as an additional insured.
When Cooke took over the station, he requested that Mobil replace the air compressor located in one of the station’s two bays. Mobil did so, purchasing a new air compressor from the manufacturer and hiring a contractor to install it. After the new compressor was installed, Cooke “didn’t have a problem with it,” according to his deposition testimony; it “worked flawless[ly].” As Cooke acknowledged in his deposition testimony, he was obligated to .maintain the compressor and its components, and he did so. To provide air to customers, Cooke ran a twenty-five foot air hose, as he described, from “the end of the hard piped system to the outside,” and attached to the hose a “true flex inflator,” which “has a gauge and a handle with a flexible hose that just goes right on the valve stem.” The customer would then “pump the handle” to “read how much air pressure is actually going into the tires.” Cooke testified at his deposition that Mobil had no responsibility to inspect or repair the true flex inflator or the 25-foot hose, and that he was unaware of any negligence by Mobil related in any way to the air system.[4]
The accident giving rise to this case occurred when Bergstresser attempted to fill his tire with air, using the hose outside the station, connected to the air compressor inside. Bergstressor’s complaint against Cooke and Oak Square alleges negligence, breach of implied warranties, and violation of G.L.c. 93A. His answers to Cooke and Oak Square’s interrogatories provide further elaboration on his theories; in answer to a standard expert witness interrogatory, he indicates his intention to call a mechanical engineer, who is expected to testify to his opinions that:
[T]he 170 psi air pressure measured at the Mobil Station was far in excess of the recommended maximum air inflation pressure of 44 psi for the tires on the plaintiff s vehicle.
The 120 to 170 psi available air pressure created a dangerous condition which could easily, rapidly, overinflate a tire to the point of explosion. The absence of either a user-adjustable air full regulator control valve or a pressure gauge attached to the air hose was not within industry standards.
Cooke and Oak Square allege in their third-party complaint that if they are liable to the plaintiff “then such loss was caused by the negligence, breach of warranties or violations of M. G.L.c. 93A” of Mobil, and that they therefore “would be entitled to contribution or indemnification” from Mobil. Mobil, in turn, alleges in its counterclaim that “[a]ll of the claims asserted by the plaintiff against the defendant, and by the third-party plaintiff against the third-party defendant are within the scope of the parties’ written indemnification agreement,” that Cooke and Oak Square breached the agreement by failing to obtain the required insurance coverage for Mobil, causing it to incur damages and liability exposure, and that it is entitled to contribution from Cooke and Oak Square for any liability found. Mobil now moves for summary judgment on both the third-party claim against it and its counterclaims.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negat *469 mg an essential element of the nonmovtag party’s case, or by showing that the nonmovtag party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, Inc., 404 Mass. at 17.
I. The Third-Party Claim.
Cooke’s and Oak Square’s claim against Mobil is for indemnification and contribution. Massachusetts law provides a cause of action for indemnification in two circumstances: pursuant to contract, and, as a matter of common law, when the party seeking indemnification “ ‘does not join in the negligent action but is exposed to derivative or vicarious liability for the wrongful act of another.’ ” Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 369 (1985), quoting Stewart v. Roy Bros., 358 Mass. 446, 459 (1970). Here, the only contractual indemnification provision runs from Cooke to Mobil, not Mobil to Cooke. Thus, Cooke and Oak Square would have a right of indemnification from Mobil only if they could establish that any liability they may have to Bergstresser arises solely from the fault of Mobil. Contribution, however, is available among joint tortfeasors by statute, G.L.c. 231, §1, subject to any indemnification rights that may exist between the parties by contract or otherwise. Thus, Cooke’s and Oak Square’s claims against Mobil depend on their ability to establish that Mobil is liable, either solely or jointly, under one or more of the theories alleged by Bergstresser against them: negligence, breach of warranty, and c. 93A.
A. Negligence.
The undisputed facts establish that Mobil’s only role with respect to the air system was to purchase the air compressor from its manufacturer and arrange for its installation by a contractor. Thereafter, Mobil did nothing in any way related to the air system, nor did it have any duty to do anything; the agreement placed on the dealer sole responsibility for all maintenance and repair of all components of the system, with the sole exception of replacing the compressor if notified of a need to do so by the dealer, which did not occur. Nothing in the record even hints at any negligence by Mobil by virtue of any act or omission related in any way to the plaintiffs accident.
B. Breach of Warranty.
Bergstresser’s second theory against Cooke and Oak Square, and hence their second theory against Mobil, is that the air pressure system, or some component of it,[5] was defective, such that its provision for customer use constitutes a breach of an implied warranty of fitness for such use. This theory depends on Mobil having made such a warranty, either by virtue of its conduct or as a matter of law.
Nothing in the record suggests that Mobil ever gave any actual warranties with respect to the air compressor. Indeed, the only provisions of the contract relating in any way to warranties is Article III C, which disclaims any warranty by Mobil as to the condition or fitness of “the marketing premises and schedule A equipment.”[6] Thus, if any warranty exists, it must arise by operation of law as a result of Mobil’s role with respect to the air compressor. Cooke and Oak Square invoke G.L.c. 106, §§2-314 and 315. These provisions relate to contracts for the sale of goods. Section 314 provides that “a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.” The section goes on to provide that to be merchantable the goods must be “fit for the ordinary purposes for which such goods are used.” Section 315 goes on to provide that such a contract also includes an implied warranty of fitness for the buyer’s particular purpose, if “the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on seller’s skill or judgment to select or furnish suitable goods.”
These provisions have no application here, because the undisputed facts establish that the arrangement by which Cooke obtained the air compressor from Mobil was not a contract for the sale of goods. Mobil did not sell the air compressor to Cooke, Oak Square, or anyone else; to the contraiy, Mobil bought the air compressor from its manufacturer, and provided it to Cooke as part of the leased premises pursuant to the franchise agreement.
If any provision of the Uniform Commercial Code would apply to this situation, it would be G.L.c. 106, §2A-212, regarding lease contracts. This section, which Cooke and Oak Square do not cite, provides that “a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind.” As with sales, the statute goes on to define “merchantable” in §2A-212(c) to include fitness “for the ordinary purposes for which goods of that type are used,” and to provide, in §2A-213, for an implied warranty of fitness for a particular purpose where the lessor has knowledge of such particular purpose.
Application of these provisions depends on whether Mobil is “a merchant with respect to goods of that kind”that is, whether Mobil is a merchant of air compressors. A merchant, for purposes of the Uniform Commercial Code, is defined in §2-104 as “a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction ...” Nothing in the record suggests that *470 Mobil was such a person. There is no evidence that it regularly deals in air compressors or holds itself out as doing so; to the contrary, the only evidence is that Mobil purchased the air compressor from its manufacturer and had it installed by a contractor, all at the request of Cooke. See Fernandes v. Union Bookbinding Co., 400 Mass. 27, 32 (1987) (seller of used press held not merchant); compare Commonwealth v. Johnson Insulation, 425 Mass. 650, 653, n. 5 (1997) (supplier and installer of asbestos product deemed merchant). These provisions therefore give rise to no implied warranty on the part of Mobil.[7]
Moreover, even if Mobil were a merchant with respect to air compressors such that an implied warranty would otherwise exist in these circumstances, the disclaimer provisions of the agreement would eliminate any such warranty as between these parties. General Laws c. 106, §2A-214 expressly permits contractual exclusion of warranties in commercial leases, provided that the language used is sufficiently explicit. Under §2A-214(3), “all implied warranties are excluded by expressions like ‘as is’, or ‘with all faults’, or by other language that in common understanding calls the lessee’s attention to the exclusion of warranties and makes plain that there is no implied warranty, if in writing and conspicuous.” Here, the disclaimer of warranties is written in capital letters, and is as explicit as language can be, announcing that the lessee accepts the premises and equipment “AS IS, WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED, AS TO THEIR CONDITION OR FITNESS FOR ANY PURPOSE." The disclaimer would thus be fatal to Cooke’s and Oak Square’s claim for breach of warranty, even if the requirements for the existence of such a warranty were otherwise met. Compare Jacobs v. Yamaha Motor Corp., U.S.A., 420 Mass. 323, 328 (1995) (contract language attempting to disclaim implied warranties ineffective in consumer transaction, pursuant to G.L.c. 106, §2-316A).
C. G.L.c. 93A.
Cooke’s and Oak Square’s theory of liability against Mobil under c. 93A, like that of the plaintiff against them, is entirely derivative of the negligence and breach of warranty theories. The defects in those theories thus compel rejection of this theory as well. Since each of Cooke’s and Oak Square’s theories of liability against Mobil fails, they cannot prevail on their claim for indemnification and contribution, and Mobil is entitled to judgment as a matter of law on the third-party claim against it.
II. Mobil’s Counterclaims.
Having incurred the expense of defending against the third-party claim, Mobil now seeks to recover these costs on two contract-based theories: pursuant to the indemnification provision in Article XII C of the franchise agreement, and as damages for breach of the Dealer’s duty to provide insurance coverage for Mobil under XII G of the agreement. Mobil also asserts, in count III of its counterclaim, a claim for contribution.
A. Indemnification.
By its express language, the indemnification provision of the franchise agreement unequivocally includes the litigation expenses Mobil seeks to recover. Cooke and Oak Square do not argue otherwise. Their sole defense to this claim is based on G.L.c. 186, §15, which provides that “(a]ny provision of a lease or rental agreement relating to real property whereby a lessee or tenant enters into a covenant.. . the effect of which is to indemnify the lessor from any or all liability to the lessee, or to any other person, for any injury, loss, damage or liability arising from any omission, fault, negligence or other misconduct of the lessor on or about the leased or rented premises . . . shall be deemed to be against public policy and void.”
The obvious purpose of this statutory provision is to prevent an owner of real property from shielding itself from the consequences of its own negligence with respect to the condition of the property. See Knous v. Mehrez, 10 Mass. L. Rptr. (1999); Hudson v. Atiniz, 1 Mass. L. Rptr. (1993). The loss for which Mobil seeks indemnification here, however, arises not from any. negligence of Mobil with respect to the condition of the real property, but solely from Cooke’s and Oak Square’s conduct in bringing their third-party claim against Mobil, thereby imposing on it the expense of litigation.[8] Thus, Mobil is entitled to judgment as a matter of law on liability on its claim for contract-based indemnification for its costs in defending the third-party claim. The amount to which it is entitled remains for determination in subsequent proceedings.
B. Breach of Contract
The undisputed facts establish that Cooke did not, as the agreement requires, obtain insurance listing Mobil as an additional insured. Cooke and Oak Square do not contend that he did. Mobil argues that this breach deprived it of a benefit it was entitled to under the agreement — that is, insurance coverage for the cost of the defense of the third-party claim in this action. It thus seeks to recover that cost as damages for breach of contract. Since Mobil is entitled to recover the same cost on its indemnification claim, it can obtain no additional damages on this breach of contract claim. Nevertheless, the undisputed facts establish Mobil’s entitlement to judgment on liability on this claim.
Cooke suggests that the contractual requirement that it provide insurance coverage for Mobil runs afoul of G.L.c. 186, § 15, because such coverage would shield Mobil from the consequences of its negligence. Nothing in the statute or any authority cited supports that theory, nor does common sense. The very nature and purpose of liability insurance is to shield the insured from the consequences of its fault. Nevertheless, public policy does not condemn liability insurance. To the contrary, such coverage serves the public policy of *471 Insuring recovery to the injured, even where the tortfeasor might otherwise be unable to provide such recovery. The contractual provision in issue here merely shifts the cost of the insurance to the party who is likely to be able to purchase it most economically, as part of a policy it would otherwise purchase to cover its own liability with respect to the premises.[9]
Cooke and Oak Square also point to language in Article XII G (1) and (2) of the agreement defining exceptions to the requirement of “garage-keeper’s legal liability insurance” and “garage liability insurance.” Focusing on the references to service bays, contractual liability, sale of food and beverages, and vehicles owned or operated in the business, they argue that these coverages would apply only to events arising from such facilities and activities, so that the absence of these coverages cannot have caused the loss for which Mobil seeks recovery. This reading distorts the language of the agreement. Fairly read, the agreement requires Cooke to have “garagekeeper’s legal liability insurance” as long as the station has service bays; whether the accident occurred in connection with the operation of a service bay or not has no bearing on the question of breach of this provision, and does not indicate whether such insurance would have covered the defense of this action. Similarly, Article XII G (2), fairly read, refers to “garage liability insurance” as a general category, with particular activities mentioned only as examples, not as an exhaustive list of coverage. There can be no doubt, on the undisputed facts, that Cooke breached his contractual obligation to obtain such coverage, and is liable to Mobil for whatever losses it suffered as a result of that breach.
It is true, however, that the record presently before the Court does not establish the scope of the insurance coverage that would be included in the categories listed in the agreement, and thus does not provide a basis for determining whether such insurance would cover the costs of defending the third-party claims against Mobil in this action. Evidence on that issue, along with evidence of the amount of those costs, may be presented at a hearing for the assessment of Mobil’s damages.
C. Contribution.
Count III of Mobil’s counterclaim, seeking contribution, is moot, since a right of contribution would arise only if Mobil were held liable on the third-party claims. Accordingly, count III of Mobil’s counterclaim must be dismissed.
ORDER
For the reasons stated, the Third-Party Defendant’s, Mobil Oil Corporation, Motion for Summary Judgment is ALLOWED. It is hereby ordered that judgment enter dismissing all counts of the third-party complaint, that judgment enter as to liability only in favor of the third-party defendant, Mobil Oil Corporation, as to counts I and II of its counterclaim, and that judgment enter dismissing count III of the third-party defendant’s counterclaim as moot.

In responding to Mobil’s statement of undisputed material facts pursuant to Superior Court Rule 9A(b)(5), Cooke and Oak Square dispute that Cooke was the franchisee, and assert that Oak Square held that position, acting through Cooke as its president. The franchise agreement, however, identifies Cooke as “Dealer” and bears Cooke’s signature, without any reference to Oak Square.

It is undisputed that the station operated two service bays.

The documents provided do not indicate the date of the amendment.

Indeed, Cooke's deposition testimony indicates that he was unaware of having sued Mobil at all.

Cooke and Oak Square argue that a dispute of material fact exists because the record leaves unclear exactly what component of the air pressure system, if any, was defective. For purposes of this analysis the Court assumes that the fault lay in the air compressor supplied by Mobil rather than the hose or “true flex inflator” supplied by Cooke.

Cooke and Oak Square suggest that this provision does not apply here because it is not established that the “air compressor” allegedly involved in the accident, and listed on Schedules B and B-l, is the same piece of equipment as the “air and water dispensers — tower air” listed on Schedule A. By its terms, however, the disclaimer applies to the “Marketing Premises.” That term is defined in Article III A to include “the improvements and equipment now or hereafter placed on the Marketing Premises as listed on the attached Schedule A, which Schedule A may from time to time be amended to reflect additions and/or deletions.” It is apparent, in context, that the disclaimer applies to all equipment provided by Mobil to Cooke as part of the premises under the agreement, with Schedule A serving as a list of such equipment. Schedules B and B-l are not lists of additional equipment that are somehow excluded from the lease terms; rather, they are detailed delineations of responsibility for the various items needed to operate the station.

Cooke and Oak Square also invoke §2-318, which eliminates pre-existing requirements of privity between a plaintiff and a manufacturer, seller, lessor, or supplier of goods. This section has no bearing on the issues presented here; the defect in Cooke’s and Oak Square’s claims is not lack of privity, but, among other things, lack of evidence that Mobil was a merchant in air compressors.

It bears noting that, even with respect to liability for injuries resulting from defects in the premises, the indemnification clause would not have the effect of shielding Mobil from liability for the consequences of its conduct, since the provision applies only to claims “arising out of Dealer’s action or inaction." Similarly, all other items listed as triggering indemnification depend by their terms on conduct of the dealer. Thus, the effect of the clause is to insulate Mobil from liability for acts or omissions by Cooke, not to insulate Mobil from any consequences of its own conduct. Moreover, the provision expressly excludes any loss “which results from Mobil’s sole negligence."

Insofar as the provision ensures that franchiser and franchisee are covered by the same insurer, it may also serve to minimize litigation by eliminating any incentive for the lessee’s insurer to bring third party claims.