Billings, A. J.
This is brought as a class action by five purchasers of specified models of Cadillac and Buick autos, who allege that the tire jacks that came with their vehicles are subject to failure during normal use, and as such are unreasonably dangerous. None of the plaintiffs allege that his or her jack has failed, or even that s/he has used it. They do allege, however, that the jacks are prone to “distortion during jacking operations,... failure ... at their pivot points during normal operations, and/or the vehicle’s rolling off... during normal jacking operations, all resulting in a significant, substantial and foreseeable risk of failing when used.” The jacks are said to violate industry standards[1] and to “placel ) the user in great danger of being injured or killed” during their use. Counts are asserted for violation of Chapter 93A, under Sections 9 and 11 (Counts I and II), for breach of warranty (III) and for intentional and negligent misrepresentation (IV and V).
Defendant GM has moved to dismiss under Rule 12(b)(6). It contends that the Complaint fails to allege any actionable misrepresentation, or reliance thereon; that because no plaintiff owns a jack that is alleged to have failed, they cannot recover for breach of warranty; and that for these reasons and because the demand letter, like the complaint, did not allege a failed jack (and thus in GM’s view, "failed to state a valid claim under c. 93A”), the Chapter 93A claim fails as well.

A. Intentional and Negligent Misrepresentation (Counts TV and V)

The Complaint alleges that GM knew or should have known that the jacks were dangerous, but nonetheless “took no steps to inform the public or these individuals of the likely failure of these jacks,” and “actively concealed material facts and thereby misled consumers because it failed to describe the aforesaid defectiveness and dangerousness of its jacks,” and that this “conduct constituted misrepresentations ...” Plaintiffs are said to have “justifiably relied upon the representations.”
The Complaint, at least as it is currently pleaded, fails to state a claim. See Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 678-79 (1942) (no liability in fraud for bare nondisclosure). It additionally falls well short of meeting Rule 9(b)’s requirement that “the circumstances constituting fraud ... be stated with particularity.”
In their opposition to the motion to dismiss, however, plaintiffs have suggested I take judicial notice of the facts that cars come with owners’ manuals; that these often contain instructions on how to change a flat; and that such instructions, if they omit to advise of the defectiveness of the jack and the risks in using it (which one suspects may be the case), constitute actionable half-truths. This seems a good deal more than is noticeable in a single helping (particularly if reliance by the plaintiffs is added to the list), but it is at least suggestive of a theory which, if factually supportable and properly pled, might withstand a Rule 12(b)(6) motion.
Counts IV and V are dismissed for failure to state a claim and, in the case of Count IV, for failure to plead the circumstances of fraud with particularity. Plaintiffs, who presumably will have Rule 11 in mind, are given leave to re-plead within 20 days of the date of this order.

B. Breach of Warranty

Legally, GM’s main assault on the warranty claim could be characterized in a number of different ways: failure to plead that the goods in question are unmerchantable; failure to allege damages; perhaps a lack of standing or of ripeness. Factually, it boils down to this: none of the plaintiffs’ jacks have failed, and they may never fail.
It must be acknowledged that in other jurisdictions, product liability claims by plaintiffs who do not allege that the goods sold failed — only that they might fail— have met with less than universal approbation. E.g., Briehl v. General Motors Corp., 172 F.3d 623, 627-28 (8th Cir. 1999) (“Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases”; citing numerous cases rejecting claims that particular products were “ ‘likely to cause’ damage,” “could fail in the future,” and the like).
Under Massachusetts law, however, the warranty claims plainly pass muster.[2] The Complaint alleges that the tire jacks in question are “defective and unreasonably dangerous”; that they “violated industry standards”; and that their propensity to fail left users “in great danger” of *16 being killed, or injured, or at least stranded with an inoperable vehicle. To be sure, these allegations readily call to mind the familiar template for a personal injury product liability complaint, with the notable (and, GM says, fatal) distinction that no plaintiff alleges physical injury. This is not, however, just a personal injury case that hasn’t happened yet; it is a commercial dispute, in which the buyers of goods allege they are unmerchantable. To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used.” Id., §3-14(2)(c). If a jack is incapable of raising a car to change a flat tire, it is unfit for normal usage. If it is incapable of raising the car without unreasonably placing those nearby in danger of serious bodily injury, it is likewise unfit to be used.
Nor is it fatal that these plaintiffs’ damages are purely economic. A buyer who receives goods which are unfit for ordinary use, or are otherwise unmerchantable, has a panoply of remedies. If he appreciates the defect before he has accepted the goods, he may reject them and refuse to pay for them (§§2-601, 2-602, and 2-711(1)); under certain circumstances he may revoke an acceptance already made (§2-608). In the case of accepted goods, he may recover damages normally consisting of the difference, at the time and place of acceptance, between the value of the goods as delivered versus as warranted (§2-714(2), and in a proper case, incidental and consequential damages and/or the cost of “cover” (i.e., of procuring substitute goods) may be available. (§§2-712(3), 2-714.)
The Complaint alleges that the defective jacks have “rendered the vehicles less valuable than they would have been if the jacks were safe for their normal and foreseeable uses.” Assuming this refers to value at the place and time of delivery, it is an adequate paraphrase of the basic measure of damages under §2-714(2). Alternatively, an owner with sufficient concern and foresight to have replaced his jack with a safer one might seek the cost of cover under §2-714.
Massachusetts cases allowing recovery of purely economic damages for breach of warranty are legion.[3] E.g., Commonwealth v. Johnson Insulation, 425 Mass. 650 (1997); Jacobs v. Yamaha Motor Corp., U.S.A., 420 Mass. 323 (1995); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737 (1994); Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103 (1989); Deerskin Trading Post, Inc., v. Spencer Press, Inc., 398 Mass. 118 (1986); Delano Growers’ Coop. Winery v. Supreme Wine Co., 393 Mass. 666 (1985). Among these, the Johnson Insulation case particularly stands out. There, the Commonwealth alleged that asbestos-containing insulation products it purchased from the defendant breached the implied warranty of merchantability in that they were “unreasonably dangerous,” and sought to recover the cost of removing them. The SJC appeared untroubled by the fact that the action was brought, not by an injured person, but by the Commonwealth as property owner, and articulated the same rules of liability as would apply in a case of personal injury;
[W]e have equated a breach of the implied warranty of merchantability, that goods be “fit for the ordinary purposes for which such goods are used,” with the sale of an “unreasonably dangerous” product. An article is not unreasonably dangerous merely because some risk of harm is associated with its use, but only where it is dangerous “to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.” A product may be unreasonably dangerous because of a defect in design. Alternatively, a product may be considered to be unreasonably dangerous because of the absence of an adequate warning, sufficient to alert those who maybe sensitive to the product and to allow users to balance the risk of harm against the product’s social utility.
425 Mass. at 660-61 (citations omitted).
It would be anomalous to open the courthouse doors to buyers of shoes with separating soles (Knapp), motorcycles that won’t start (Jacobs), engines that won’t run (Bay State-Spray), catalogs whose pages stick together (Deerskin Trading Post), and moldy wine (Delano Growers’ Cooperative) — none of whom has suffered, or is likely to suffer, physical injury from the goods in question — but not to owners of a product who allege a design defect capable of causing injury or death. If there were any doubt concerning the sufficiency of such a claim, the Johnson Insulation case should remove it. The motion to dismiss Count III is denied.
C. Chapter 93A
Having pleaded breach of warranty, the plaintiffs have pleaded a Chapter 93A claim. Maillet v. ATF-Davidson Co., 407 Mass. 185, 193 (1990). These plaintiffs would all appear to be subject to Section 9, and have satisfied the demand requirement. Whether their claims are appropriately conjoined with those of non-consumer (Section 11) class members is better left for class certification proceedings. Accordingly, the motion to dismiss Counts I and II is denied.

ORDER

The motion to dismiss is ALLOWED as to Counts IV and V, with plaintiffs having 20 days in which to re-plead. In all other respects, the motion is DENIED.

 The plaintiffs’ demand letter under c. 93A, §9, submitted as part of the papers on the motion to dismiss, identified two specific industry standards with which the jacks are alleged not to comply.

The cases GM cites for the “economic loss rule” (e.g., FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993)) deal with negligence claims; they have no application to a claim for breach of warranty. See discussion in text, below. GM’s citation to Jacobs v. Yamaha Motor Corp., 420 Mass. 323, 330-31 (1995), for the proposition that a consumer may not sue a manufacturer, with whom he is not in privity, for purely economic losses is similarly puzzling. Jacobs in fact holds the *17 opposite, a result dictated by the statutory language of c. 106, §2-318.

This is doubtless true as well in the jurisdictions in which Brlehl and the cases it relies upon were decided; notwithstanding its adaptability to personal injury cases, the UCC is still fundamentally a commercial code. One senses in these opinions a certain reluctance to entertain claims by persons who have not “really” been injured. Injury, however, is defined in the Code itself, particularly Part 7 of Article 2, and expressly includes purely economic damages of the sort alleged here.