**IRISH VENTURE, INC., Plaintiff,**

v.

**FLEETGUARD, INC. and Rose's Oil Service, Inc., Defendants.**

No. 02–CV–12111–MEL.

United States District Court, D. Massachusetts.

May 1, 2003.

A. Silvia Fabrizio, Christopher A. Kenney, Sherin and Lodgen LLP, Boston, MA, for Rose's Oil Service, Inc., Defendant.

Phillip M. Goldberg, Tiffany C. Woodie, Jeffrey A. Soble, Foley & Lardner, Chicago, IL, Ian A. McKenney, Bingham McCutchen LLP, Boston, MA, for Fleetguard, Inc., Defendant.

Norman A. Peloquin, II, New Bedford, MA, for Irish Venture, Inc., Plaintiff.

### MEMORANDUM AND ORDER

LASKER, District Judge.

Irish Venture, Inc. (Irish Venture) sues Fleetguard, Inc. (Fleetguard) and Rose's

Oil Service, Inc. (Rose's Oil) in admiralty for damages arising from the alleged misfunction of an oil lube filter in a commercial fishing boat. Irish Venture, a Massachusetts corporation based in New Bedford, owns and operates the commercial fishing boat Western Venture (the Vessel). Fleetguard, an Indiana corporation, manufactures OEM replacement lube oil filters. Rose's Oil, a Massachusetts corporation, is a local distributor of the filters.

Irish Venture's complaint includes counts of negligence and breach of warranty, and alleges damages totaling $78,568.83. Rose's Oil has asserted cross claims against Fleetguard for indemnity and contribution. Fleetguard and Rose's Oil move separately, on identical grounds, to dismiss Irish Venture's negligence claims. Fleetguard also moves to dismiss Irish Venture's warranty claims.

### I.

Irish Venture purchased a number of Fleetguard filters from Rose's Oil prior to July 21, 2000. Before making the purchase, Irish Venture allegedly informed Rose's Oil that the filters would be installed on the Vessel's main engine, a Caterpillar diesel engine, model no. D–399. On July 21, 2000, Irish Venture installed a number of these filters on the Vessel as part of routine maintenance.

On July 31, 2000, while the Vessel was at sea, the main engine failed, allegedly due to a defect in one of the filters. As a result, Irish Venture suffered damage to the Vessel and its engine.

### II.

Defendants move to dismiss Irish Venture's negligence claims (Counts I, III, V, and VII) on the grounds that, under the "economic loss doctrine" relating to admiralty claims, purely economic losses are not recoverable in product liability actions in the absence of personal injury or damage to property other than the product itself. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River*, the Supreme Court held that when a product injures itself, the commercial user loses only the value of the product and that in such cases, contract law, and the law of warranty in particular, are the proper rules to be followed in determining the responsibilities of a seller. *Id.* at 871–72, 106 S.Ct. 2295. Defendants argue that because the filter is a component of the engine and caused damage only to the engine itself, Irish Venture has alleged damages only to the relevant product itself, and not to "other property."

■ Irish Venture contends that the economic loss doctrine does not apply to this case because the engine was "other property" rather than the product itself. It notes that the alleged malfunctioning of the filter damaged not only the filter itself but the entire engine. Since the engine was not manufactured by Fleetguard nor purchased from Rose's Oil, Irish Venture argues, it constitutes "other property."

The property at issue in *East River* was a turbine that was damaged by a malfunctioning component. The court held that each turbine, since it was supplied as an integrated package, was properly regarded as a single unit: " 'Since all but the very simplest of machines have component parts, [a contrary] holding would require a finding of "property damage" in virtually every case where a product damages itself.' " *East River*, 476 U.S. at 867, 106 S.Ct. 2295 (citation omitted). *See also Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 930 (5th Cir.1987) (ship damaged by faulty component was product "itself" where component was installed pri-

or to purchase). The *Shipco* court dubbed this the "benefit of the bargain" test, looking to the object of the contract or bargain that governs the rights of the parties. *See Shipco,* 825 F.2d at 928. The Supreme Court endorsed this approach in *Saratoga Fishing Co. v. J.M. Martinac & Co.,* noting "a distinction between components added to a product by a manufacturer before the product's sale to a user, and those items added by a user to the manufactured product." 520 U.S. 875, 884, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997)(internal citations omitted).

Such an approach would suggest that replacement parts should be distinguished from the original components that come with a finished product. *See Transco Syndicate # 1 v. Bollinger Shipyards, Inc.,* 1 F.Supp.2d 608, 612 (E.D.La.1998) (holding that a ship damaged by replacement motors was "other property" and distinguishing *East River* and *Shipco* on the grounds that plaintiff had not purchased a single product with integrated parts from the product's manufacturer). *See also Avemoc Insurance Co., Inc. v. Honeywell International, Inc.,* 2002 DNH 78, 2002 U.S. Dist. LEXIS 7931 (D.N.H.2002) (observing that because the manufacturer of an autopilot system had no contractual obligation to the plaintiff as to damage to the plane's airframe, the animating principal of *East River*—to protect contract remedies from drowning in a sea of tort—did not apply).

However, several courts have reached the opposite conclusion, extending the *East River* holding to replacement parts. The Third Circuit has held that:

> ... [T]here is [no] rational reason to deviate from the integrated product rule simply because the defective component happens to be a replacement part in-

stead of the part originally supplied with the product. The law is clear that if a commercial party purchases all of the components at one time, regardless of who assembles them, they are integrated into one product. Since all commercial parties are aware that replacement parts will be necessary, the integrated product should encompass those replacement parts when they are installed in the engine.

*Sea–Land Service, Inc. v. General Electric Co.,* 134 F.3d 149, 154 (3d Cir.1998) (internal citations omitted). *See also Exxon Shipping Co. v. Pacific Resources, Inc.,* 835 F.Supp. 1195 (D.Haw.1993) ("[S]pare and replacement parts may ... be part of the 'object of the bargain,' regardless of whether or not they are purchased under the same contract.") (citing *Petroleum Helicopters, Inc. v. Avco Corp.,* 930 F.2d 389 (5th Cir.1991)).

Although it is admittedly a close call, I find the latter cases unpersuasive. The object of Irish Venture's bargain with Rose's Oil was an oil filter. The filter, once installed, caused damage not only to itself—damage which is presumably adequately addressed by contract damages—but also to the engine, which was purchased in an entirely separate bargain, and cannot be said to have been any part of the deal struck between Irish Venture and Rose's Oil.

Accordingly, Fleetguard and Rose's Oil's motions to dismiss Irish Venture's negligence claims are DENIED.

*III.*

█ Fleetguard next contends that under Massachusetts contract law,[1] Irish Venture's breach of warranty claims must

---

**1.** Because breach of warranty falls outside admiralty jurisdiction, Massachusetts law governs these claims.

be dismissed because Irish Venture has alleged neither an express warranty nor privity of contract. Fleetguard argues that under Article 2 of the Uniform Commercial Code, as adopted by Massachusetts, commercial plaintiffs must allege privity of contract to maintain a breach of warranty action against a manufacturer. *Sebago v. Beazer East Inc.*, 18 F.Supp.2d 70, 99 (D.Mass.1998) (citing *Jacobs v. Yamaha Motor Corp., USA*, 420 Mass. 323, 649 N.E.2d 758 (1995)). Hence, Fleetguard asserts that to prevail, Irish Venture, as a commercial plaintiff, must allege privity or an express warranty. According to Fleetguard, privity is lacking here because Irish Venture bought the filter from a distributor (Rose's Oil) rather than from Fleetguard.

Irish Venture responds that *Sebago* has been characterized by a Massachusetts court as an attempt to "predict" Massachusetts law. *City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568, *16, 2000 Mass.Super. Lexis 352 at *72 (July 13, 2000). According to Irish Venture, *Sebago* should not be relied upon because it misreads the relevant Massachusetts case law. In *Jacobs v. Yamaha Motor Corp., USA,* the Supreme Judicial Court, holding that lack of privity would not bar a *consumer* suing a manufacturer for breach of an implied warranty, commented that "[c]ontract-based warranty claims involving commercial transactions *may* generally call for different treatment than tort-based warranty claims." *Jacobs*, 420 Mass. at 330, 649 N.E.2d at 763 (emphasis added). Irish Venture argues that this open-ended dictum does not contravene the plain meaning of section 2–318 of the UCC:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer ... of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff

did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer ... might reasonably have expected to use, consume or be affected by the goods.

M.G.L. ch. 106, § 2–318.

As Irish Venture points out, the SJC has not clearly stated a rule as to whether a commercial plaintiff must allege privity of contract to maintain a breach of warranty action against a manufacturer. However, as Judge Wolf observed in *Sebago*, 18 F.Supp.2d at 99, and as the very phrase from *Jacobs* cited by Irish Venture indicates, the SJC has strongly suggested that privity is still required in commercial transactions despite the apparently broad reach of M.G.L. ch. 106, § 2–318. *Jacobs*, 420 Mass. at 330, 649 N.E.2d at 763 (noting that "contract-based warranty claims involving commercial transactions may generally call for different treatment than tort-based warranty claims" and favorably citing scholarly article urging such a distinction).

Irish Venture has cited no subsequent Massachusetts case casting doubt on the direction the SJC indicated in *Jacobs*. The one Massachusetts case cited by Irish Venture, *Smith & Wesson*, does not support Irish Venture's position: rather than criticizing *Sebago*, the court in *Smith & Wesson* simply distinguished the case at bar from *Sebago* on the grounds that it involved a consumer rather than commercial transaction. Thus, I concur with Judge Wolf's conclusion that privity of contract is required in implied warranty claims regarding commercial transactions.

Accordingly, Fleetguard's motion to dismiss is GRANTED as to Irish Venture's claims against it for breach of warranty. Counts II and VI of the complaint are dismissed.

*IV.*

For the reasons stated above, defendants' motions to dismiss Counts I, III, V, and VII are DENIED, and Fleetguard's motion to dismiss Counts II and VI is GRANTED.

It is so ordered.