Fremont-Smith, Thayer, J.

Introduction

This case is brought as a proposed class action by purchasers of certain models of Ford automobiles, alleging that the outside door handle systems (“door latches”) on the autos are defective and could accidentally open in event of certain types of motor vehicle collisions. Plaintiffs allege that the latches are unreasonably dangerous because they do not comply with the Federal Motor Vehicle Safety Standard 206 (“Safety Standard 206”), 49 C.F.R. §571.206,[1] or with Ford’s own internal standards. None of the plaintiffs, however, are alleged to have actually been involved in a collision where their doors have accidentally opened.
Plaintiffs claim that defendants Ford Motor Company and Ford Motor Company of Canada (“Ford”) have violated Chapter 93A, §§2 and 9 (Count I), engaged in a civil conspiracy to violate Chapter 93A (Count II), breached express and implied warranties (Count III and IV), and were unjustly enriched (Count V).
For purposes of a motion for judgment on the pleadings, the Court assumes as true the plaintiffs’ assertion of facts.
As gleaned from the pleadings, plaintiffs allege that the outside door handle systems are defective for the following Ford autos: 1997 to 2000 Ford F-150 series; 1997-2000 Ford F250 (light duty); 1997-2000 Ford Expeditions; and, 2000 Ford F150 Super Crew trucks because they do not comply with Safety Standard 206, which specifically addresses door latch retention and integrity. In pertinent part, this safety standard requires that the latch systems must be tested for strength in the longitudinal load, transverse load, and the inertia load. 49 C.F.R. §571.206, §5.1.1. The longitudinal and transverse load must be tested utilizing the Society of Automotive Engineers Recommended Practice J839 (“SAE J839”), while “inertia load” can be tested utilizing SAE J839 or other “approved tests.” Id. at S5.1.1.2.
It is alleged that Ford initially used the SAE J839 method to test the door latches, and that, because certain component manufacturers used the wrong number in their calculations, the door latches initially “passed” the SAE J839 tests during early compliance testing. Plaintiffs allege, however, that Ford then received credible information confirming the non-compliance and safety hazards associated with the defective door latches. This included results from impact testing of the autos in October 1995 and August 1997, where, upon impact, certain side doors would open. In September 1997, Ford allegedly had a review group investigate the issue of the doors opening upon impact. Again, in February 2000 Ford investigated, and in March 2000, an engineering report *662 acknowledged that the door handles did not comply with Safety Standard 206 and recommended a recall campaign. It is further alleged that, in March 2000, a memorandum recommended a safety-related recall campaign, but that Ford then revised the memorandum and canceled the proposed recall.
At some point, Ford used a 1967 General Motors test (“GM test”) to demonstrate compliance with Safety Standard 206, and in particular, with the “inertia load” requirement. Plaintiffs claim that this “30 year-old methodology” had never been used by Ford previously or since, and was never referenced in any internal compliance work. Moreover, Ford did not notify the National Highway Transportation Safety Administration (“Transportation Safety Agency”) of its issues with the door latches or its decision to rely on the GM test.[2]
Plaintiffs allege they are injured by the defective door latches in that they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards, and (3) will incur the cost of repairing the vehicles to make them safe. (First Amended Complaint, para. 81.)
Ford has moved for judgment on the pleadings with respect to all of plaintiffs’ claims, arguing that plaintiffs’ alleged causes of action conflict with federal regulations, so are pre-empted by federal law, that plaintiffs have failed to allege any cognizable injury because they have not suffered any personal injuiy or actual damages from the allegedly defective door latches, and that the claims are time-barred by the applicable statute of limitations.

The Applicable Legal Standard

A motion for judgment on the pleadings is “to challenge the legal sufficiency of the complaint.” Burlington v. District Attorney for the N. Dist., 381 Mass. 717, 717-18 (1980). For purposes of such a motion, the moving party is deemed to admit the complaint’s allegations of fact, whereas the moving party’s allegations are taken as true only if specifically admitted by the plaintiff. Liberty Mut. Ins. Co. v. United States, 490 F.Sup. 328, 329 n.1 (E.D.N.Y. 1980). For purposes of the court’s consideration of a Rule 12 motion, all of the well pleaded factual allegations in the adversaiy’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false. 5 Wright & Miller, Federal Practice and Procedure §1368, at 691 (1969). Minaya v. Massachusetts Credit Union Share Ins. Co., 392 Mass. 904, 905 (1984).

Damages

Plaintiffs assert they have been injured because they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value would be if they complied with safety standards, and (3) would have to incur the cost of repairing the vehicles to make them safe. Ford, however, argues that plaintiffs have not pled facts showing that they have suffered any injuiy or harm for which relief can be granted.

Count I. Chapter 93A

The allegations of the amended complaint to the effect that Ford was aware of a dangerous condition but went to great lengths to cover it up rather than to address it certainly alleges a c. 93A violation. The question is whether plaintiffs allege a cognizable injuiy under c. 93A. In the recent case of Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790 (2006), the Court considered whether consumers who rented motor vehicles from the defendant had stated a c. 93A claim where the car rental contract had provided that the collision damage deductible for an accident would not be waived if the renter violated any provision of the rental agreement. The Court concluded that, since no plaintiff had actually been in a collision so as to have invoked the rental contract, there was no cognizable injuiy under c. 93A, which permits an action under §9 only by any person “injured” by another’s unfair or deceptive act. The SJC described the alleged injury as “speculative at best, and premature.” Id. at 802, n.21. The Court concluded (at 802):
Every consumer is, of course, entitled to the full protection of law. If any person invades a consumer’s legally protected interests, and if that invasion causes the consumer a loss — whether that loss be economic or noneconomic — the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G.L.c. 93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G.L.c. 93A, §9, and our earlier case law.
Similarly here, no plaintiff alleges that he has been in an accident where the door latches failed or has otherwise suffered any actual damage. Plaintiffs allege only the rather speculative and premature damages stated in para. 81 of the amended complaint and enumerated at p.3, supra.
Accordingly, the Court allows Ford’s motion for judgment as to Count II for lack of any allegation of cognizable injuiy.
The holding of Hershenow, as it may relate to this case, however, is far from clear, particularly in light of the other cases discussed in Justice Cowin’s concurrence, at 802-10, which provide more latitude in the definition of what constitutes cognizable injuiy under c. 93A. Moreover, this Court has denied Ford’s motion for judgment on Count IV for breach of implied warranty. Also to be considered is the fact that, as a breach of warranty can itself constitute a c. 93A violation, Slaney v. Westwood Auto, Inc., 366 Mass. 688, 702 (1974), this Court’s dismissal of Count I may be inconsistent with its non-dismissal of Count IV.
*663 Accordingly, although the Court dismisses Count I, it will report the case to the Appeals Court pursuant to Mass.R.Civ.P., Rule 64.

Count II. Conspiracy and Concert of Action to Violate Chapter 93A

The tort of conspiracy action requires a combination of two or more persons to perform an unlawful act. FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). None of the plaintiffs here have been physically or emotionally harmed by a failed door handle. In fact, plaintiffs have not alleged that the door latches have malfunctioned in any way. See Lowrie v. Castle, 225 Mass. 37, 51 (1916) (damages not recoverable where they are remote, speculative, or hypothetical). Moreover, the alleged damages for inadequate value of the vehicles and/or repair and replacement are purely economic injuries which cannot be recovered in an action such as this. Marcil v. John Deere Indus. Equip. Co., 9 Mass.App.Ct. 625 (1980). Nor can plaintiffs maintain a conspiracy to violate c. 93A where the c. 93A claim has itself been dismissed.
Accordingly, defendants’ motion is allowed as to Count II.

Count III. Breach of Express Warranty

The only express warranty alleged is the sticker affixed to the vehicles which the complaint alleges, specifically attested to compliance with CMVSS and FMVAA 206. The complaint does not state, however, that plaintiffs saw the stickers or relied on them in purchasing their vehicles. There are no allegations that the labels were “part of the benefit of the bargain,” as required by c. 106, §2-313(1)(a).
For these reasons, defendants’ motion is allowed with respect to Count III.

Count IV. Breach of Implied Warranty

In Massachusetts, it is clear that a manufacturer not in privity with the purchaser may be sued for breach of express and implied warranty. G.L.c. 106, §2-318. If a product is in a defective condition and unreasonably dangerous, then it is not “fit for the ordinary purposes for which the goods are used.” As stated in Commonwealth v. Johnson Insulation, 425 Mass. 650, 660 (1997), “[we] have equated a breach of the implied warranty of merchantability, that goods be ‘fit for the ordinary purposes for which the goods are used,’ with the sale of an ‘unreasonably dangerous’ product.” In a nearly identical case, Holtzman v. General Motors Corp., Civil No. 021368 (Middlesex Super.Ct. July 2, 2002) [15 Mass. L. Rptr. 15], Judge Billings found that a complaint alleging a design defect in tire jacks capable of causing injury or death, without more, was sufficient to survive a motion to dismiss, and pointed out that many Massachusetts cases have allowed recovery of purely economic damages for breach of warranty. See: Commonwealth v. Johnson Insulation, 425 Mass. 650 (1997); Jacobs v. Yamaha Motor Corp., USA, 420 Mass. 323 (1995); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737 (1994); Bay State-Spray & Prouincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103 (1989); Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118 (1986); Delano Growers’ Coop. Winery v. Supreme Wine Co., 393 Mass. 666 (1985). The question here, however, is not whether the alleged dangerous condition of the latches would be a breach of warranty, or whether economic damages could be recovered therefrom, but rather whether the alleged mere possibility of such damages which might later be incurred by a plaintiff, should survive a motion to dismiss. In Johnson Insulation, supra, the Commonwealth had undertaken a study to determine the cost of asbestos removal from its buildings, and sued to recover both the already expended costs and the prospective costs of abatement removal on projects it had yet to undertake. The jury awarded damages for both types of costs, and the SJC approved, pointing out that an injury was suffered when the defective product had been purchased, and that the amount of damages could be measured either by the cost of repair (already incurred or to be incurred) or by the diminution in value caused by the defect. Id. at 665-66.
Here, the damages alleged in para. 81 of the amended complaint are less immediate and more prospective and speculative than in Johnson Insulation, where expenditures had been calculated and had been either actually incurred or were planned to be incurred. Nevertheless, the referenced language of the SJC indicates that plaintiffs’ injuries have already been suffered at the time of purchase, and indicates that the damages need not have already been actually incurred when the complaint is filed.
Accordingly, the Court concludes that, in this case, the injury allegations (see para. 81 of the amended complaint) are sufficient to survive the motion for judgment and denies the motion as to Count IV.

Count V. Unjust Enrichment

The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one to the detriment of another under circumstances where a benefit has been conferred by one to the other with the reasonable expectation of being compensated therefore. Salamon v. Terra, 394 Mass. 857, 859 (1985). The alleged facts in this case do not lend themselves to such a cause of action.
Accordingly, defendants’ motion is allowed as to Count V.

The Defense of Preemption

Preemption is raised as a defense to all counts of the complaint.
*664 Unlike the situation in Geier et al. v. American Honda Motor Company, Inc. etal., 529 U.S. 861 (2000), where the Supreme Court held that a suit against Honda for failure to install airbags on all its newly-manufactured vehicles was preempted because it contradicted D.O.T. regulations which prescribed a gradual implementation of airbag systems, here plaintiffs do not complain about or challenge FMVSS 206, but challenge only the efficacy of Ford’s testing of its latches for compliance therewith. Although Ford contends that D.O.T. regulations permitted its use of the “GM test” to ascertain compliance, and plaintiffs challenge the efficacy of that test, plaintiffs do not challenge the D.O.T. safety standard itself but only Ford’s testing for compliance therewith. Accordingly, the Court discerns no contradiction between the allegations brought by plaintiffs under state law and the federal safety standards here involved. It will not dismiss the action on that basis.

The Statute of Limitations Defense

This defense is also raised to all counts of the complaint. G.L.c. 106, §2-318 provides a three-year statute of limitations for plaintiffs’ implied warranty claim against Ford, which is the only surviving claim. Suit was filed on February 15, 2005, and the case involved 1997-2000 model year cars. The complaint, however, is silent in regard to when plaintiffs purchased their cars and as to when an event or events occurred “which were reasonably likely to put plaintiff on notice that someone may have caused [them] injury.” See Bowen v. Eli Lilly & Co., 408 Mass. 204 (1990).
Accordingly, the applicability of the statute of limitations defense cannot be determined on the pleadings but will have to await discovery.

ORDER

For the reasons stated above, defendant’s motion for judgment is ALLOWED with respect to Counts I, II, III and V. It is DENIED as to Count IV. Proceedings in the case are stayed pending appellate resolution of this Court’s ruling with respect to Count I (violation of c. 9 3 A).

This safety standard concerns “door locks and door retention components.” Plaintiffs also allege that the autos do not comply with the Canadian Federal Motor Vehicle Safety Standard, i.e., CMVSS 206. Several other proposed class actions have been brought around the United States based upon the same allegations. See: Hiñóte v. FordMotor Company (Circuit Court for Escambia County, Florida) (dismissed because alleged injuries were only “prospective and speculative in nature” so that “no justiciable issue [was] presented”); Paulin v. Ford Motor Company (Ontario Court of Justice, No. 3428X05) (class action denied); Richard D. Day et aL v. Ford Motor Company et al (Superior Court of Guilford County, North Carolina) (actual injury sufficient to withstand motion to dismiss alleged under North Carolina Unfair and Deceptive Trade Practices Act).

Ford is required to notify the Secretary of Transportation if a discovered defect is related to motor vehicle safely or if such a defect prevents the vehicle from complying with an applicable motor vehicle safety standard. See 49 U.S.C. §30118(c)(1) & (2).