Fremont-smith, Thayer, J.
Defendants Ford Motor Company and Ford Motor Company of Canada (collectively, Ford) have moved to dismiss plaintiffs’ Second Amended Complaint. The Complaint alleges violations of G.L.c. 93A and breach of implied warranty regarding Ford’s manufacture, distribution, and sale of vehicles with defective outside door handle systems. This Court allowed Ford’s motion for judgment on the pleadings with regard to Iannacchino’s initial amended complaint as to the c. 93A counts [21 Mass. L. Rptr. 661], and the Supreme Judicial Court affirmed the dismissal for a different reason on appeal. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).[1] The lannacchino Court held that lannacchino did not set out a sufficient factual basis for the plaintiffs’ claim that Ford’s vehicles failed to comply with FMVSS 206 (the relevant safety standard) or were defective in some other way that caused the plaintiffs to suffer an injury or loss. Iannacchino, 451 Mass. at 635.
In addition, the lannacchino decision refined the standard governing motions to dismiss under Mass.R.Civ.P. 12(b)(6). Id. at 636. Quoting liberally from the United States Supreme Court’s opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.CL 1955, 1966-69 (2007), the lannacchino Court announced that a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 635-36. “While factual allegations need not be detailed, they must be enough to raise a right to relief above the speculative level [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” Id.
*34 In plaintiffs’ original amended complaint, the broad assertions of Ford’s failure to establish compliance with Federal Motor Vehicle Safety Standard (FMVSS) 206 in its sale of such vehicles relied exclusively on Ford’s use of one test (the “GM test”) rather than another test which plaintiffs contended should have been used (the “SAE J839 test”) to measure compliance. Iannacchino, 451 Mass. at 631-32. When Iannacchino conceded in the SJC that the National Highway Traffic Safety Administration (NHTSA) considered both tests capable of demonstrating compliance with FMVSS 206, plaintiffs claim of regulatory noncompliance was left without any alleged factual support, but only with conclusory allegations of defect and non-compliance.
However, in dismissing plaintiffs breach of warranty and c. 93A allegations, the S.J.C. did so with leave to amend, holding that Iannacchino’s complaint did state adequate grounds for finding cognizable damages under both c. 93A and breach of warranty theories if plaintiffs could allege factual support for Ford’s alleged knowing sale of noncompliant vehicles. Id. at 630-31.
Comparing Iannacchino’s prior complaint with the Second Amended Complaint, however, it is apparent that plaintiffs no longer rely exclusively on defendants’ use of the GM test. The allegations, moreover, are much more comprehensive and exact. The amended complaint alleges that the door handle systems cannot withstand the minimum threshold of force required by the relevant safety standard (FMVSS 206), and further alleges:
Para. 2
[The] outside door handle systems . . . are defective because they contain substandard outside handle torsion springs . . . The springs thus are weaker and have less torque, making them susceptible to unintended door openings . . . [and] are not capable of achieving the 30g inertial standard of Federal Motor Vehicles Safety Standard, “FMVSS,” 206.
Para. 51 and 100
FMVSS 54.1.1.3 specifies that for inertia load, the door latch shall not disengage from the fully latched position when a longitudinal or transverse inertia load of 30g’s is applied to the door latch system... The vehicles do not comply with FMVSS 206 because the outside handle torsion springs have a manufacturing defect affecting the torque making the system not capable of achieving 30g’s of inertia resistance.
Additionally, plaintiffs allege that Ford did not properly employ the test it actually did use (the GM test) so that its methodology did not demonstrate compliance with FMVSS 206 as required.[2] They allege that the approved GM test, developed in 1967 and approved by the NHTSA, subjects the door handle system to acceleration forces through a controlled collision on a crash test sled, which is filmed to ensure that no internal door parts moved during the acceleration. (Second Am. Compl. ¶87.) However, when testing the door handle systems that Ford knew were defective, Ford used what the present complaint alleges to have been a “modified” GM test in a manner which was inappropriate, unreasonable and not approved by NHTSA. (Second Am. Compl. ¶88.)
Although not strictly relevant to this motion, it may also be noted that as a result of similar litigation around the country, NHTSA has addressed the allegedly defective door handle systems in a report it published in June 2008. While NHTSA did not conclusively evaluate Ford’s testing procedures in its report, it declined to undertake systematic testing to assess the implicated vehicles’ compliance with FMVSS 206, citing “significant practical difficulties [with]... the plausible position taken by Ford with regard to the vehicles’ compliance, [and] the substantial resources that would be required to address this matter in detail . . .” Denial of Petition for Compliance Investigation, 73 Fed. Reg. 32,074, 32,075 (June 5, 2008). With respect to the simulation analysis Ford used, NHTSA noted with approval that it was detailed and based on the dimensional specifications of the components, utilized conservative measures of values, disregarded the effects of friction, and used the NHTSA-approved GM dynamic pulse test. Id. NHTSA concluded that it would be “very unlikely to develop sufficient evidence to overcome the simulation analysis conducted by Ford.” Id.
Considering that the testing method used by Ford now bears NHTSA’s imprimatur when used in conjunction with the approved GM test, plaintiffs’ likelihood of success on the merits may appear doubtful. But the allegation of even doubtful facts will withstand a Rule 12(b)(6) motion if the alleged facts “possess enough heft to show that the pleader is entitled to relief.”[3] Iannacchino, 451 Mass. at 636.
CONCLUSION
Accordingly, defendants’ Motion to Dismiss the Second Amended Complaint for failure to state a claim is DENIED.

This Court found that plaintiffs had pled facts which stated a claim for Ford’s violation of c. 93A as well as breach of warranty, but dismissed the complaint as to c. 93A for lack of any allegation of cognizable injury. The Supreme Judicial Court concluded that plaintiffs had alleged cognizable injury, but dismissed the complaint under Rule 12(b)(6) for failure to state a claim because plaintiffs had not adequately alleged facts indicating a design defect causing injury.

Plaintiffs made the same argument in their original complaint, which the Iannacchino Court implied would have been sufficient to avoid judgment on the pleadings had it been supported with any factual allegations. See Iannacchino, 451 Mass. at 631-32.

Plaintiffs’ likelihood of success may be enhanced, however, by Ford’s alleged earlier recognition of a defect in the door latches and the allegation that Ford itself had originally planned a recall of such vehicles, but abandoned that intention without explanation.