**FIRST CHOICE ARMOR & EQUIPMENT, INC.,**
**Plaintiff,**

v.

**TOYOBO AMERICA, INC. and Toyobo Co., Ltd., Defendants.**

**Civil Action No. 09–11380–NMG.**

United States District Court,
D. Massachusetts.

Feb. 17, 2012.

David M. Cohen, W. Pitts Carr, Emory Palmer, Carr, Tabb & Pope, LLP, Atlanta, GA, Benjamin McCracken, James Parks, Mark Cooper, Jaffe, Raitt, Heuer and Weiss, Southfield, MI, Matthew C. Welnicki, Melick, Porter & Shea, LLP, Michael S. Appel, Sugarman, Rogers, Barshak & Cohen, P.C., Boston, MA, for Plaintiff.

Stephen Gibbons, Eric C. Lyttle, Michael Lyle, Weil, Gotshal & Manges, LLP, Washington, DC, Christopher D. Barraza, David Singh, Jed P. Winer, Jeremy T. Grabill, Keith B. Gibson, Konrad L. Cailteux, Natalie Blazer, Weil, Gotshal & Manges LLP, New York, NY, Patrick J. O'Toole, Jr., Thomas C. Frongillo, Weil, Gotshal & Manges, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This action arises from allegations of breach of warranty, fraud and deceptive acts and practices related to the sale of Zylon® fiber used in the manufacture of (purportedly) bulletproof vests.

### I. *Factual background*

Between 2000 and 2005, Toyobo Co., Ltd. ("Toyobo Co."), a Japanese corporation, and its North American subsidiary, Toyobo America, Inc. ("Toyobo America"), a New York corporation, manufactured and sold Zylon® fiber to various third-party weaving companies who, after converting it into woven ballistic fabric, sold that fabric to body armor manufacturers for use in bullet-proof vests. During that period, plaintiff First Choice Armor & Equipment ("First Choice"), a body armor manufacturer, purchased woven Zylon® fabric from Lincoln Fabrics ("Lincoln Fabrics"), a third-party weaving company to whom Toyobo supplied Zylon® fiber. For a time, business was booming and profits were high.

That all changed when, in the Summer of 2003, one police officer was killed and another was injured after bullets penetrated their Zylon® body armor in the line of duty. The shootings prompted a multi-year investigation into Zylon® body armor by the National Institute of Justice ("NIJ"), the federal agency responsible for testing and promulgating performance standards for body armor. In one ballistics test, over 58% of used Zylon® vests tested were penetrated by at least one round during a six-shot series. On August 24, 2005, the NIJ published its findings which revealed that Zylon® vests degrade at an unacceptable rate thereby preventing them from providing a safe level of ballistic resistance. The NIJ immediately revoked safety compliance certificates for Zylon® body armor and prohibited the future sale of all such armor in the United States.

### II. *Procedural history*

On August 18, 2009, First Choice brought suit against Toyobo Co. and Toyobo America (collectively, "Toyobo") alleging that the companies engaged in a pattern and practice of intentionally misrepresenting the quality, condition, safety and suitability of Zylon® and the vests in which it is used. According to First Choice, Zylon® degrades as a result of over-neutralization, the nature of the weaving process and exposure to light, heat and moisture. Despite allegedly knowing about those defects, Toyobo continued to manufacture, sell and promote

Zylon® for ballistic protection applications. Those alleged misrepresentations and omissions include, *inter alia,* failing to disclose that Zylon® substantially degrades over time, falsifying the results of internal studies to cover up that degradation and representing that Zylon® was "the safest, lightest and best bullet resistant fiber available in the world" despite known information to the contrary.

The Amended Complaint asserts claims for breach of express warranty (Count I), breach of implied warranty (Count II), fraud (Count III), fraudulent inducement (Count IV) and unfair and deceptive trade practices in violation of M.G.L. ch. 93A (Count V). First Choice requests damages exceeding $8 million to compensate it for 1) costs associated with the recall and replacement of Zylon® vests, 2) litigation expenses incurred in defending against a federal probe into its use of Zylon® vests and 3) lost profits and damage to its business reputation.

On September 14, 2009, and December 1, 2009, Toyobo America, Inc. and Toyobo Co., Ltd., respectively, moved to dismiss the Amended Complaint on an assortment of grounds. Toyobo asserted, *inter alia,* that plaintiff failed to plead its claims with particularity, that such claims were time-barred and that Toyobo did not owe a duty to provide information about Zylon®. On May 25, 2010, 717 F.Supp.2d 156 (D.Mass. 2010), the Court denied defendants' motions to dismiss.

On June 3, 2011, defendants filed a motion for summary judgment and motions to exclude the testimony of plaintiff experts Alan Lesser, Donald McLemore and Carter Lord. On that same date, plaintiff filed a motion for partial summary judgment. Those motions have been opposed and are currently pending before the Court.

## III. *Summary Judgment Motions*

### A. Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

## B. Application

Toyobo moves for summary judgment on the grounds that all of plaintiff's claims are time-barred and that plaintiff's breach of warranty claims are legally insufficient because First Choice has failed to establish the requisite privity between the parties. First Choice, in turn, moves for partial summary judgment on its breach of warranty and Chapter 93A claims on the ground that the undisputed facts entitle it to judgment as a matter of law on those counts.

### 1. Breach of warranty (Counts I and II)

■ According to Toyobo, First Choice has failed to establish the requisite privity between the parties to support its breach of warranty claims because it purchased Zylon® fiber and fabric from Lincoln Fabrics, a third-party weaving company, and not directly from Toyobo. First Choice responds that it need not establish privity of contract because the parties were engaged in a significant business relationship.

First Choice cites the right rule but in the wrong context. The cases First Choice references establish the rule, not applicable to breach of warranty claims, that contractual privity is not required for Chapter 93A claims "so long as the parties are engaged in more than a minor or insignificant relationship." *E.g., Baker v. Goldman Sachs & Co.*, 656 F.Supp.2d 226, 239 (D.Mass.2009).

Breach of warranty claims are governed by a different standard. Section 2–318 of the UCC provides, in relevant part:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence,

although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods.

M.G.L. ch. 106, § 2–318. For a time, Massachusetts courts assumed that § 2–318 eliminated the privity requirement for all breach of warranty actions regardless of the kind of injury involved. *See, e.g., Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 441 N.E.2d 1027, 1031 (1982); *Cameo Curtains, Inc. v. Philip Carey Corp.*, 11 Mass.App.Ct. 423, 416 N.E.2d 995, 998 (1981).

■ More recently, however, Massachusetts has fallen in line with the majority of states in recognizing that § 2–318 was intended to apply only to product-liability actions and, therefore, eliminates the vertical privity requirement only for tort-based breach of warranty claims by consumers, not for contract-based breach of warranty claims by commercial retailers. *See, e.g., Bay State–Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 533 N.E.2d 1350, 1353–56 (1989) (pointing out the distinction), *Jacobs v. Yamaha Motor Corp., U.S.A.*, 420 Mass. 323, 649 N.E.2d 758, 763 (1995) (mentioning that "contract-based warranty claims involving commercial transactions may generally call for different treatment than tort-based warranty claims"); *Sebago, Inc. v. Beazer E., Inc.*, 18 F.Supp.2d 70, 99 (D.Mass.1998) (construing Massachusetts law to require that commercial plaintiffs prove privity of contract to maintain breach of warranty actions against manufacturers); *Irish Venture, Inc. v. Fleetguard, Inc.*, 270 F.Supp.2d 84, 87 (D.Mass. 2003) (confirming that interpretation). Accordingly, a commercial retailer may no longer bring a breach of warranty claim

against a remote manufacturer who is not the immediate seller of the disputed good.

A contrary rule, the courts noted, would "defeat[ ] the legitimate contractual expectations on which the manufacturer's pricing and other decisions are made." *Sebago*, 18 F.Supp.2d at 99 n. 13. Such a rule could

> result in a completely undeserved windfall for the plaintiff (since the consideration he paid would not reflect the costs of such extensive warranty rights), and would make it virtually impossible for a manufacturer effectively to disclaim warranties and remedies in a commercial transaction as against remote buyers, a result antithetical to the contract-based principles on which commercial-warranty law is based.

John C. Bartenstein, *Recent Developments in Commercial Warranty Law:* Bay State *and* Canal Electric, 35 Boston Bar J. 4, 9–10 (1991).

First Choice is a commercial retailer asserting contract-based breach of warranty claims, so it must establish privity of contract. First Choice cannot do so by reference to its purchase contracts with Lincoln Fabrics, the third-party weaving company that purchased Zylon® fiber from Toyobo and converted it into woven ballistic fabric for First Choice. When a manufacturer sells a product to an intermediary, who subsequently re-sells it to a commercial retailer, and there is no privity of contract between the manufacturer and the commercial retailer, no implied warranty runs from the manufacturer to the commercial retailer. *See Sebago*, 18 F.Supp.2d at 99.

Nor can First Choice establish privity by pointing to its two written agreements with Toyobo. The first, a financial support agreement entered into in 2000, provided that Toyobo would ship 140 yards of its fabric, free of charge, to assist First Choice in obtaining NIJ certification. The second, a nondisclosure agreement, provided that First Choice would not disclose information about a new version of Zylon® that Toyobo ultimately never marketed. Because neither agreement is a contract for the sale of goods, neither can give rise to an express or implied warranty. *See* M.G.L. c. 106, § 2–102; *Johnson v. Nat'l Sea Prods., Ltd.*, 35 F.3d 626, 629–30 (1st Cir.1994) (applying Massachusetts law); *Ramcharran v. Carraro Graphic Equip., Inc.*, 823 F.Supp. 63, 67 (D.Mass.1993) (applying Massachusetts law).

Because the plaintiff, a commercial retailer, and the defendant, a remote manufacturer, were not parties to a contract for the sale of goods, plaintiff's breach of warranty claims fail as a matter of law.

### 2. Fraud (Counts III and IV)

Toyobo next asserts that plaintiff's fraud and fraudulent inducement claims are time-barred.

#### a. Standard

■■■ The statute of limitations period for fraud and fraudulent inducement claims is three years from the date the action accrues. · M.G.L. c. 260 § 2A. A cause of action for fraud generally accrues when the plaintiff discovers or reasonably should have discovered the defendant's fraud. *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir.2002) (applying Massachusetts law). Assessing whether a plaintiff reasonably should have discovered a defendant's fraud is a two-step process. First, the court surveys the record to determine whether "storm warnings" were evident that would put a reasonable investor on notice of a possible fraud. *Id.* If so, the court evaluates whether the plaintiff was reasonably diligent in investigating them. *Id.*

■■■ An exception to the general rule arises when the defendant fraudulently

conceals the basis of the claim and, in so doing, prevents the plaintiff from discovering it. In such cases, the statute of limitations is tolled until a plaintiff's actual discovery of the factual bases underlying its cause of action. *See* M.G.L. ch. 260 § 12. The fraudulent concealment statute requires a plaintiff to show that the defendant took an affirmative step to cover up the cause of action. *Tagliente v. Himmer*, 949 F.2d 1, 6 (1st Cir.1991) ("[M]ere silence is not a fraudulent concealment ... there must be something in the nature of positive acts with intent to deceive."). If the applicability of the fraudulent concealment exception turns on disputed issues of fact, those facts "must be resolved by a jury." *Taygeta Corp. v. Varian Associates, Inc.*, 763 N.E.2d 1053, 1063 (2002).

#### b. Application

■ Toyobo represents that the following events which took place more than four years before the Complaint was filed put First Choice on notice of the factual bases underlying its claims:

- Summer 2003: Police officer Tony Zeppetella was killed in the line of duty after a bullet penetrated his Zylon® body armor. Negative publicity about Zylon® ensued.

- October 2003: Toyobo provided First Choice with Zylon® degradation data allegedly contradicting Toyobo's prior representations about Zylon®.

- Winter 2004: Multiple states served subpoenas and civil investigative demands on First Choice.

- April 2005: First Choice stopped selling Zylon® vests on advice of counsel.

- May 2005: Class action plaintiffs sued First Choice on the grounds that its Zylon® vests were defective.

- June 2005: The United States sued Toyobo and another body armor retailer for fraudulently misrepresenting that Zylon® is suitable for use in bullet-proof vests.

At the very least, Toyobo declares, First Choice knew or should have known of the alleged fraud by August 24, 2005 (the date of the NIJ ban), more than three years before the Complaint was filed. First Choice responds that it did not discover evidence of Toyobo's fraudulent practices until it received incriminating Toyobo documents through court-ordered discovery in 2008 and 2009.[1]

To determine whether plaintiff's claims are time-barred, the Court must decide whether the undisputed facts, construed in the light most favorable to First Choice, establish that First Choice discovered or reasonably should have discovered the factual bases underlying its claims before August 18, 2006, i.e., three years before the Complaint was filed. Because genuine issues of material fact remain concerning the commencement of the statutory period, that question must be answered in the negative.

A reasonable jury could find that First Choice did not discover, nor could have discovered through the exercise of reasonable diligence, the factual bases for its fraud claims until First Choice received incriminating Toyobo documents during the limitations period. The NIJ de-certification and events leading up to it put First Choice on notice that Zylon® was defective but not necessarily that Toyobo had known Zylon® was defective and had concealed the results of its internal investiga-

---

1. First Choice acquired such documents only after separate courts ordered their discovery in *United States v. Toyobo*, No. 1–07–CV– 01144 (D.D.C.) and *Second Chance Body Armor, Inc. v. Toyobo Am., Inc.*, No. GT 04–12515 (W.D.Mich.).

tion. A reasonable jury could likewise find that Toyobo took affirmative steps to conceal its fraud and that such concealment prevented First Choice from uncovering it sooner. In most instances, including this one, whether a plaintiff knew or should have known of its cause of action and whether a defendant concealed that cause of action "will be decided by the trier of fact." *Taygeta,* 763 N.E.2d at 1063.

For the foregoing reasons, defendants' motion for summary judgment with respect to Counts III and IV will be denied.

### 3. Chapter 93A (Count V)

■ Toyobo's statute of limitation defense, as it applies to plaintiff's Chapter 93A claim, is unavailing for the same reasons. A reasonable jury could find that First Choice did not discover, nor could have discovered through the exercise of reasonable diligence, Toyobo's allegedly deceptive practices until 2008 at the earliest. It could likewise find that Toyobo took affirmative steps to conceal those practices.

First Choice itself moves for summary judgment with respect to its Chapter 93A claim on the ground that the undisputed facts entitle it to judgment as a matter of law that Toyobo engaged in unfair and deceptive acts and practices. Toyobo responds that it never deceptively marketed Zylon® or concealed material information from the public. Toyobo reasons, in the alternative, that even if the undisputed facts were to establish some deception or unfairness on its part, what constitutes an "unfair or deceptive act or practice" is an inherently factual question best answered by jury.

The plaintiff's allegations are serious and, if proved at trial, may very well reach the "level of rascality" required to establish a Chapter 93A violation. *In re Pharm. Indus. Average Wholesale Price Litig.,* 582 F.3d 156, 185 (1st Cir.2009).

Because that inquiry is fact-intensive, however, the Court will reserve judgment on plaintiff's Chapter 93A claim until after trial.

Plaintiff's motion for partial summary judgment will therefore be denied with respect to Count V.

### 4. Affirmative defenses

■ First Choice asserts, correctly, that it is entitled to summary judgment on the following affirmative defenses asserted by Toyobo: waiver, estoppel, collateral source rule, failure to mitigate, assumption of the risk and unclean hands. Toyobo has failed to raise a triable issue of fact as to any of those affirmative defenses. *FDIC v. Elder Care Servs., Inc.,* 82 F.3d 524, 526 (1st Cir.1996) ("[I]f a party resists summary judgment by pointing to a factual dispute on which it bears the burden at trial, that party must point to evidence affirmatively tending to prove the fact in its favor."). It has neither expounded theories under which such defenses might apply to this case nor met its burden of offering evidence tending to prove them.

Plaintiff's motion for partial summary judgment is therefore allowed with respect to the foregoing affirmative defenses.

## IV. *Expert Preclusion Motions*

### A. Standard

The admission of expert evidence is governed by Federal Rule of Evidence 702, which codified the Supreme Court's holding in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. *United States v. Diaz,* 300 F.3d 66, 73 (1st Cir.2002). Rule 702 charges a district court with determining whether: 1) "scientific, technical, or other specialized knowledge will assist the trier of fact," 2) the expert is qualified "by knowledge, skill,

experience, training, or education" to testify on that subject, 3) the expert's proposed testimony is based upon "sufficient facts or data," 4) that testimony is the product of "reliable principles and methods" and 5) the expert "applies the principles and methods reliably to the facts of the case." In short, a court must answer three questions:

"Is this junk science?"

"Is this a junk scientist?"

"Is this a junk opinion?"

*McGovern ex rel. McGovern v. Brigham & Women's Hosp.*, 584 F.Supp.2d 418, 424 (D.Mass.2008).

 The Court must be vigilant in exercising its gatekeeper role because of the latitude given to expert witnesses to express their opinions on matters about which they have no firsthand knowledge and because an expert's testimony may be given substantial weight by the jury due to the expert's status. *See Daubert*, 509 U.S. at 595, 113 S.Ct. 2786; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Court must, nonetheless, keep in mind that

> vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

*Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. If an expert's testimony is within "the range where experts might reasonably differ," the jury, not the trial court, should be the one to decide among the conflicting views of different experts. *Kumho Tire*, 526 U.S. at 153, 119 S.Ct. 1167.

**B. Application**

Toyobo moves to exclude the testimony of First Choice experts Dr. Alan Lesser, Dr. Donald McLemore and Carter Lord.

Dr. Lesser and Dr. McLemore, both polymer scientists, are expected to testify as to 1) fiber properties critical to ballistic protection applications, 2) the physical and chemical processes that caused Zylon® to degrade and 3) the effect of the degradation on the use of Zylon® in body armor. Separately, Dr. Lesser will testify about the information he believes was known to Toyobo regarding this degradation and the adequacy of the steps Toyobo took to neutralize it, while Dr. McLemore will testify that Zylon® vests, although certain to degrade, are capable of meeting the initial NIJ qualification criteria when first manufactured.

 As polymer scientists with impressive credentials, Dr. Lesser and Dr. McLemore appear to be qualified to offer opinions on the properties of Zylon® fiber and the effect of its degradation on body armor. Such topics are beyond the ken of the average person and the experts' opinions on those topics seem to be reasonably calculated to aid the jury in understanding key issues in this litigation. Toyobo's concern that neither expert has conducted ballistic testing on soft body armor goes to weight, not admissibility.

 Mr. Lord is a firearms and ballistics expert who is expected to testify that ballistic resistance of Zylon® in soft body armor degrades significantly over time at a rate that violates NIJ industry standards. He bases that conclusion on his review of the results of ballistic testing by third parties of body armor containing Zylon®. Toyobo contends that Mr. Lord may not base his conclusions on such results because they were conducted by third parties on vests manufactured by other companies.

In the event that a proper foundation is laid at trial, Mr. Lord will be permitted to explain and draw conclusions from ballistics tests, even though he did not personal-

ly conduct them and even if they are otherwise inadmissible, because data gleaned from such testing is the kind of evidence generally relied upon by experts in the field to form opinions about a fiber's suitability for use in body armor. *See* Fed. R.Evid. 703. The fact that the tests did not involve First Choice body armor made from 100% Zylon® manufactured by Toyobo does not change the analysis. This case turns on whether Zylon® is suitable for use in ballistic vests generally, not on whether a particular brand or model of Zylon® vests is defective.

## ORDER

In accordance with the foregoing,

1) Plaintiff's motion for partial summary judgment (Docket No. 81) is, with respect to Toyobo's affirmative defenses, **ALLOWED,** but is, with respect to Counts I, II and V, **DENIED;**

2) Defendants' motion for summary judgment (Docket No. 79) is, with respect to Counts I and II, **ALLOWED,** but is, with respect to Counts III, IV and V, **DENIED;**

3) Defendants' motions in *limine* to exclude the testimony of Alan Lesser (Docket No. 73), Donald McLemore (Docket No. 75) and Carter Lord (Docket No. 77) are **DENIED;**

**So ordered.**