**FESI Holdings, Inc. v Kamylon Holdings, LLC**

2025 NY Slip Op 31784(U)

May 15, 2025

Supreme Court, New York County

Docket Number: Index No. 161957/2023

Judge: David B. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. DAVID B. COHEN** | PART 58 |
| *Justice* | |

---------------------------------------------------------------------------------X

FESI HOLDINGS, INC.,TIMOTHY J FALLON

                      Plaintiff,

                 - v -

KAMYLON HOLDINGS, LLC,TRANSFORMATIVE
HEALTHCARE LLC,

                      Defendant.

---------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 161957/2023 |
| MOTION DATE | 09/13/2024, 09/16/2024, 10/02/2024 |
| MOTION SEQ. NO. | 006 007 008 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 104, 105, 106, 139, 140, 141, 148, 149, 150

were read on this motion to/for                               **SEAL**                       .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 145, 147, 151, 153, 154, 155, 158, 159

were read on this motion to/for                            **DISMISSAL**                 .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 143, 144, 146, 152, 156, 157, 160, 161, 162

were read on this motion to/for                       **CONSOLIDATE/JOIN FOR TRIAL**   .

Defendants Kamylon Holdings, LLC (Kamylon) and Transformative Healthcare LLC (Transformative) move by order to show cause for certain records to remain permanently sealed (motion sequence 006), for dismissal of plaintiffs' second amended and supplemental complaint (SAC) (motion sequence number 007), and for consolidation of this action with another pending action in this court (motion sequence number 008). Motion sequence numbers 6, 7, and 8 are consolidated for disposition.

**161957/2023  FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**
**Motion No.  006 007 008**

**Page 1 of 18**

1 of 18

[* 1]

## I.      PERTINENT BACKGROUND

Plaintiff FESI Holdings, Inc. (Fesi) is a Massachusetts corporation with its principal place of business there, and is the holding company through which plaintiff Fallon owns membership units in defendant Transformative. Fallon has a primary residence in Massachusetts and is the president and owner of FESI (NYSCEF 109, SAC, ¶ 21-22).

Defendant Kamylon, a Delaware limited liability company with a principal place of business in Massachusetts, is a private equity fund with a controlling interest in Transformative, and has at least one member whose primary residence is in Massachusetts (*id.*, ¶ 23).

Fallon previously owned Fallon Ambulance Service (the ambulance service), and he, Kamylon, and Transformative entered into a Contribution and Exchange Agreement (NYSCEF 114, the CEX Agreement), by which Fallon transferred the ambulance service to Transformative.

The CEX agreement provides that, before the closing date, Fallon was to form FESI and make FESI party to the CEX Agreement. Fallon would contribute all the equity in the ambulance service to FESI; FESI would transfer all that equity to Transformative; and, in exchange, Transformative would issue 290,000 Transformative Common Units (the Exchange Units) to FESI (*id.*, 1.1 [a], [d]). "Concurrently," Transformative would make a loan to FESI in the amount of $3 million pursuant to a promissory note to be given by Fallon at the closing (*id.,* [d]), and Fallon would use the loan to satisfy various debts listed on Schedule 1.2 (b) of the CEX Agreement (*id.*, 1.2 [b]).

The CEX Agreement and a subsequent letter that modified certain aspects of the agreement (the Letter) were dated January 17, 2018. Ultimately, Transformative transferred to FESI 205,000 units of equity in Transformative with each unit having a value of $41.32984 (NYSCEF 110, the Letter, ¶ 1, 4) and loaned FESI $1,676,664 (NYSCEF 111, the promissory

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**          **Page 2 of 18**
**Motion No.  006 007 008**

2 of 18

note).  The promissory note, secured by FESI's equity in Transformative, was between FESI and Fallon, on the one hand, and Kamylon and Transformative, on the other.

Plaintiffs aver that the parties initially agreed on an unsecured note, and allege that nonparty Charles Lelon, Kamylon's CEO, fraudulently induced Fallon and FESI into pledging all FESI's equity in Transformative as collateral for the note and into signing a secured note. Shortly before the closing of the transfer of the ambulance service to Transformative, Lelon represented to Fallon that Transformative's EBITDA[1] had increased from approximately $2 million in 2016 to $3.9 million in 2017 (NYSCEF 109, ¶ 6).  FESI and Fallon did not know that Transformative's true 2017 EBITDA was below $150,000 (*id.*).  Lelon also told Fallon that the promissory note would benefit FESI by providing it with the opportunity for a "'true-up'" at the time of an exit transaction, so that FESI would receive at least the agreed-upon value of $41.32984 for each unit of FESI's equity in Transformative (*id.*, ¶ 7).

Plaintiffs allege that Lelon made these statements to induce them into signing the secured note, and if Lelon told Fallon the truth about Transformative's 2017 EBITDA, plaintiffs would never have agreed to sign a secured note (*id.*, ¶ 8).  Plaintiffs also allege that, after they signed the note, Kamylon fraudulently concealed material financial information about Transformative, including audited financial statements.

Sometime thereafter, plaintiffs defaulted on the note.  On June 17, 2024, Transformative convened a foreclosure sale at which Transformative was the only participant.  At the sale, FESI's equity in Transformative was sold to Transformative "by way of an arbitrary credit bid" of $450,000 (NYSCEF 109, ¶ 15).  Plaintiffs allege that that their equity in Transformative was

---

[1] EBITDA means earnings before depreciation, taxes, interest, and amortization; measures a business's value through financial performance, and can be calculated with the data on a balance sheet or income statement) (Anne M. Payne, New York Limited Liability Companies and Partnerships: A Guide to Law and Practice § 11:18 [2d Edition, Oct 2024 update, Westlaw: NYPRAC-LIMLIAB § 11:18])

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**          **Page 3 of 18**
  **Motion No.  006 007 008**

initially valued at $8.4 million, that it had increased in value since then, and that defendants reduced the value of the collateral so that they could obtain it at a price far lower than what it was worth (*id.*, ¶ 81).

Plaintiffs maintain that defendants engaged in a fraudulent scheme to take their equity in Transformative and deprive them of Capital Transaction Proceeds, as follows: as part of the transfer of the ambulance service from plaintiffs to Transformative, Kamylon, Transformative, and FESI entered into the Amended and Restated Operating Agreement of Transformative (the operating agreement), dated March 19, 2018, by which FESI was made a member of Transformative. The operating agreement recites that FESI contributed equity to Transformative (NYSCEF 131 at 1) and defines a Capital Transaction as any liquidation of Transformative or any sale of all or substantially all its assets (*id*., ¶ 12.02).

Capital Transaction Proceeds are the net receipts from a Capital Transaction and shall be distributed to members pro rata in proportion to their units (*id*., ¶¶ 8.02 [a], 12.02 at 41). The operating agreement also provides as follows. "Offset. Whenever Transformative is obligated to pay any sum to any Member, any amounts" owed by the member to Transformative may be deducted from said sum before payment (*id.*, ¶ 13.01 at 45).

The SAC alleges that FESI's collateral in Transformative is subject to a gain in value because Transformative engaged in a Capital Transaction by selling three of its businesses and thereby gaining tens of millions in Capital Transaction Proceeds (NYSCEF 109, ¶ 55). However, Transformative did not pay FESI the Capital Transaction Proceeds to which FESI was entitled as a Transformative member. Plaintiffs allege that the proceeds would have offset what they owed on the note (*id.*, ¶ 57).

**161957/2023  FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**
**Motion No.  006 007 008**

**Page 4 of 18**

**Motion to dismiss the SAC (motion sequence number 007)**

**Fraudulent Inducement against Kamylon (First Cause of Action)**

A.     **Applicable law**

Defendants move to dismiss this claim pursuant to CPLR 3211(a)(1) and (7) and CPLR 3016, arguing that the claim that plaintiffs were fraudulently induced into signing the promissory note is time-barred pursuant to CPLR 202.

On a motion to dismiss pursuant to CPLR 3211(a)(7), the allegations in plaintiff's complaint are accepted as true, constructed liberally, and given every favorable inference (*Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 141 [2017]).  Dismissal of the complaint is warranted only "if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recover" (*id*. at 142).

When a nonresident sues in New York on a cause of action accruing outside New York, CPLR 202 requires that the cause of action be timely under the limitation periods of both New York and the jurisdiction where the claim arose (*Matter of Part 60 RMBS Put–Back Litig.*, 195 AD3d 40, 47 [1st Dept 2021]).  "Consequently . . . it is the shorter of the two states' statutes of limitations that controls the timeliness of the action" (*id.*).  When applying CPLR 202, known as the borrowing statute, the New York court borrows the other state's statute of limitations and also that state's rules on tolling its statute of limitations (*Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20, 31 [1984]).

That plaintiffs reside in Massachusetts and that their claims accrued there is not disputed. Under the discovery rule, where a plaintiff has suffered an "inherently unknowable" wrong, for accrual to occur, a plaintiff must have knowledge or sufficient notice of two related facts: (1) that

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**          **Page 5 of 18**
  **Motion No.  006 007 008**

5 of 18

[* 5]

he was harmed; and (2) that his harm was caused by the defendant's conduct (*Harrington v. Costello*, 467 Mass 720, 725 [2014]).

Fraud claims in Massachusetts have a three-year statute of limitations (Massachusetts General Laws Annotated 260 § 2A). Under the Massachusetts discovery rule, a fraud claim accrues when the plaintiff discovers or reasonably should have discovered that it was harmed and that the harm was caused by the defendant's conduct (*First Choice Armor & Equip., Inc. v Toyobo Am., Inc.*, 839 F Supp 2d 407, 413 [D Mass 2012]; *Harrington v Costello*, 467 Mass 720, 725, 7 NE3d 449 [2014]). The court asks what a reasonable person in the plaintiff's position would have known or inquired about at relevant times or upon being put on inquiry notice (*AA&D Masonry, LLC v South St. Business Park, LLC,* 93 Mass App Ct 693, 699-700 [2018]; *Crocker v Townsend Oil Co.*, 464 Mass 1, 8, 979 NE2d 1077 [2012]).

"Inquiry notice triggers the obligation of a reasonable person to investigate the possible claim and assert a cause of action within the period provided by the statute of limitations" (*Szymanski v Boston Mut. Life Ins. Co.*, 56 Mass App Ct 367, 371, 778 NE2d 16 [2002]). An action will be tolled until the time that the plaintiff discovers the facts giving rise to the cause of action (*id*. at 370). The limitations period will not be tolled if the plaintiff has the means to acquire the facts underlying its cause of action (*Gattineri v Williams-Sonoma Stores, Inc.*, 103 Mass App Ct 1117, 223 NE3d 1237 [2023]).

In New York, the limitations period on a fraud claim is six years from the time of the fraud or two years from the time the fraud was discovered or with reasonable diligence, could have been discovered, whichever is later (CPLR 213[8]; *Sargiss v Magarelli*, 12 NY3d 527, 532 [2009]; *Parrish v Unidisc Music, Inc.*, 68 AD3d 566, 567 [1st Dept 2009]). A fraudulent

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**
**Motion No.  006 007 008**

**Page 6 of 18**

6 of 18

inducement claim accrues at the time the plaintiff completes the act induced by the fraudulent misrepresentations (*Prichard v 164 Ludlow Corp.*, 49 AD3d 408, 408 [1st Dept 2008]).

## B. Arguments and Analysis

The sale of plaintiffs' ambulance service to Transformative closed on March 19, 2018 (NYSCEF109, ¶ 8), the same day as the note (NYSCEF 111). Defendants claim that plaintiffs knew the truth about Transformative's 2017 EBITDA on March 14, 2018, when Kamylon sent an email attaching Transformative's 2017 financial statements to nonparty Sean Tyler at his request (NYSCEF 154); Tyler was allegedly a "key executive" of Fallon's (NYSCEF 109, ¶ 44).

Defendants claim that the emailed statements show that Transformative's 2017 EBITDA was not $3.9 million, that the statements informed Tyler of this, and that Tyler's knowledge was imputed to plaintiffs. Defendants argue that the fraud claim thus accrued on March 19, 2018, the date that the parties entered into their transaction, and therefore, pursuant to Massachusetts law, plaintiffs had three years, until March 19, 2021, to bring a fraud claim, but this action was not commenced until December 11, 2023.

Defendants also observe that under New York law, the statute of limitations on fraud began to run on the date of the transaction and lapsed six years until March 2024. As the shorter Massachusetts period prevails over the longer New York period, defendants contend that the fraudulent inducement claim is time-barred.

Plaintiffs aver that Tyler's knowledge cannot be imputed to them because he was not their agent or, rather, that he was a disloyal agent. About Tyler, the SAC alleges:

> To conceal that drop in EBITDA from Fallon, Lelon informed one of Fallon's key executives, Sean Tyler, that he would be promoted to serve as President of the entire Transformative operation, thereby currying favor with Tyler. Lelon informed Tyler, who became beholden to Lelon, that Tyler's duties did not run to Fallon, but rather to the company, Transformative. Lelon did not permit Tyler to share material financial developments with Fallon.

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**   **Page 7 of 18**
**Motion No.  006 007 008**

[* 7]

7 of 18

(NYSCEF 109, ¶ 44).

Tyler became the president of Transformative after the note was signed. Plaintiffs allege that it was not until 2022 that they learned what Tyler allegedly knew in 2018. Specifically, plaintiffs contend that in or about September 2021, Fallon learned concerning information about the billing practices of the companies that Transformative owned before it acquired the ambulance service. As a result, about September 20, 2021, Fallon made a public record request to a state health insurance agency concerning Transformative's records.

"By that time, Fallon also had still not received audited financial statements for Transformative despite Kamylon's and Transformative's duties to make them available to FESI promptly after each fiscal year at substantially the same time as Kamylon received them" (NYSCEF 109, ¶ 48). "Fallon had diligently attempted to raise these and related financial issues with" Tyler, Transformative's accounting firm, and Transformative's attorneys (*id.*, ¶ 49).

Plaintiffs further allege that "[T]hese communications led to Fallon learning in 2022" that Transformative's 2017 EBITDA in 2017 was not at least $3.9 million as Lelon had represented, but below $150,000 (*id.*, ¶ 50). They maintain that Fallon could not have learned of the fraudulent inducement claim before 2022, notwithstanding his due diligence, as Transformative and Kamylon controlled and restricted his access to pertinent information before he signed the closing documents and in response to later requests by him (*id.*, ¶ 51). Plaintiffs argue that the statute of limitations period for fraud did not begin to run until 2022, when they were put on inquiry notice, and therefore, their fraud claim was timely asserted in 2023.

Here, plaintiffs sufficiently allege that Tyler was not their true agent. When an agent acts for its own benefit, "the presumption that he has disclosed [to his principal] all the facts that have come to his knowledge no longer prevails" (*Warshaw v Mendelow*, 2011 NY Slip Op 33972[U],

**161957/2023  FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**          **Page 8 of 18**
   **Motion No.  006 007 008**

8 of 18

*14 [Sup Ct, NY County 2011]; *see also Baker v Latham Sparrowbush Assos*., 72 F3d 246, 255 [2d Cir 1995]).  Whether Tyler can be deemed to have been plaintiffs' agent will determine whether the statute of limitations began to run upon Tyler's receipt of Transformative's 2017 financial records.  Thus, defendants do not yet establish that the fraudulent inducement claim is time-barred.

**Breach of Contract against Kamylon and Transformative (Second Cause of Action)**

Plaintiffs allege that Transformative failed to adhere to the foreclosure terms in the promissory note, which provided that if plaintiffs defaulted by failing to make a payment when due, Transformative had "the right to foreclose upon the Collateral" and transfer to Kamylon any portion thereof necessary to satisfy any outstanding amounts owed to Transformative, "with any Exchange Units being so transferred being valued at the Per Unit Price" (NYSCEF 111, ¶ 6).  The collateral on the note consisted of FESI's ownership, designated as Exchange Units, in Transformative.

Plaintiffs contend that Transformative foreclosed upon more units than necessary to satisfy the debt on the note and that the units were valued at less than the agreed value for each unit.  Plaintiffs allege that Transformative should have foreclosed on fewer than 50,000 units and provided adequate credit to "true-up" the value of the units (NYSCEF 109, ¶ 18, 95).

According to defendants, section 6 of the Note provides them with the right to proceed by foreclosure, but not the obligation to do so, which is reemphasized in section 5 which provides that, in the event of a default, defendants may exercise any and all rights and remedies available to them in law or equity or otherwise.  Moreover, defendants allege that section 6 applies only to a specific default event, and that plaintiffs' bankruptcy filing triggered a different default event, for which section 6 does not apply (NYSCEF 138).

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**                **Page 9 of 18**
   **Motion No.  006 007 008**

9 of 18

[* 9]

As section 6 only applies to a specific default event and gives defendants the right, but not the obligation, to proceed by way of foreclosure, and as defendants did not foreclose but rather conducted a UCC sale and, as a default event occurred that was not covered by section 6, defendants demonstrate that plaintiffs' breach of contract claim, premised on defendants' alleged violation of section 6 of the Note, must be dismissed.

**Violation of the UCC against all defendants (Third Cause of Action)**

A motion to dismiss based on documentary evidence pursuant to CPLR 3211(a) (1) may be appropriately granted where the evidence utterly refutes a fact alleged by the plaintiff and conclusively establishes a defense to the asserted claims as a matter of law" (*Interstate Indem. Co. v East 77 Owners Co., LLC,* 224 AD3d 456 [1st Dept 2024]; *M & E 73-75, LLC v 57 Fusion LLC*, 189 AD3d 1, 6 [1st Dept 2020]). UCC 9-610(b) requires that every aspect of the disposition of collateral, including the method, manner, time, and place, must be commercially reasonable.

Plaintiffs allege, among other things, that defendants precluded them from participating in the June 2024 foreclosure sale, withheld information from them and other potential participants, conducted the sale on short notice, failed to adequately market the units to potential participants, and wrongly held the sale on a Sunday evening (NYSCEF 109, ¶¶ 80, 101). They also argue that Kamylon and Transformative concealed from plaintiffs and interested bidders financial information that would have enabled an understanding of the amount of Capital Transaction Proceeds that were attached to the units (*id.*, ¶ 67).

Moreover, plaintiffs claim that the notice of foreclosure and public sale violated UCC 9-613 as it lacked a clear statement entitling the debtors to an accounting of the unpaid indebtedness (*id.*, ¶ 110). Plaintiffs contend that defendants, by precluding plaintiffs'

participation in the auction and by failing to adequately market the membership units, thereby effectively orchestrated a transfer of all of FESI's equity (initially valued at $8,472,617.20) to themselves for not only less than fair market value but for little more than 1/20th of plaintiffs' initial investment.

Defendants provide documentary evidence to show that they noticed the auction three separate times over the course of seven months (NYSCEF 118, 112, 113) and that each notice was circulated to potential bidders (NYSCEF 132 – 137), comprised of a select group of 25 companies that operate or invest in the ambulance service industry (NYSCEF 16) and to investors (NYSCEF 129). Moreover, Transformative's counsel invited plaintiffs' counsel to provide a list of potential buyers (NYSCEF 16), and Transformative adequately marketed the collateral by publishing notices in newspapers on November 22, 2023 (NYSCEF 127, 128).

However, defendants' evidence does not conclusively refute plaintiffs' allegations that the disposal of the units was not commercially reasonable, as whether a term or requirement is commercially reasonable is generally an issue of fact (*Clover Private Credit Opportunities Origination (Levered) II, L.P. v Sanberg*, 227 AD3d 540, 541 [1st Dept 2024]; *Atlas MF Mezzanine Borrower, LLC v Macquarie Tex. Loan Holder LLC*, 174 AD3d 150, 165 [1st Dept 2019]).

**Conversion against all defendants (Fourth Cause of Action)**

The SAC alleges that defendants exercised unauthorized control over FESI's membership units in Transformative or that portion of the membership units not needed to cover FESI's obligation under the note, thus converting said units. As the conversion claim is thus duplicative of the breach of contract claim, it is dismissed (*see Richbell Info. Servs., Inc. v Jupiter Partners,*

161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL
Motion No.  006 007 008

Page 11 of 18

11 of 18

*L.P.*, 309 AD2d 288, 306 [1st Dept 2003]; *Fesseha v TD Waterhouse Inv. Servs., Inc.,* 305 AD2d 268, 269 [1st Dept 2003]).

**Accounting, Declaratory Judgment, and Injunctive Relief under the NY UCC against all defendants (Fifth Cause of Action)**

As defendants fail to show that plaintiffs are not entitled to an accounting pursuant to UCC 9-613, that portion of the claim is not dismissed.

Plaintiffs seek a permanent injunction to restrain defendants from taking any further actions towards transferring FESI's units until issues regarding UCC 9-613(a)(4) and 9-610(b) are fully adjudicated.

Defendants state that the units were cancelled by operation of law after Transformative acquired them, pursuant to Limited Liability Company Act, Delaware Code, 6 Del. C. § 18-702(e). Defendants also argue that the law of the case doctrine bars the remedy of a permanent injunction because, when denying plaintiffs' application for a preliminary injunction staying the auction, this court held that plaintiffs "failed to demonstrate that they would suffer a harm that could not be compensated by money damage" (NYSCEF 45, April 17, 2024 decision).

However, an order denying a preliminary injunction is not the law of the case regarding the propriety of a permanent injunction, as permanent injunction is a final judgment issued on the merits of the claims (*R.C. v City of New York*, 229 AD3d 173, 176 [1st Dept 2024]), and the party seeking a permanent injunction must prevail on the underlying merits of its case (*see Town of N. E. v Vitiello*, 159 AD3d 766 [2d Dept 2018]). As the merits have yet to be determined, this claim is not dismissed (*Meyer v Stout*, 45 AD3d 1445 [4th Dept 2007] [grant or denial of preliminary injunction is not law of the case or ruling on merits of claim for permanent injunction]).

Plaintiffs also seek a declaration that the notice of foreclosure and sale were not compliant with the terms of the note and the CEX Agreement and UCC 9-613(a)(4), that the sale itself was commercially unreasonable and in contravention of UCC 9-610(b), and that any transfer of units pursuant to the notice are invalid or void (NYSCEF 109, ¶ 116).  As the declaratory judgment claim is duplicative of the other claims, it is dismissed (*Tahari v Narkis,* 216 AD3d 557, 560 [1st Dept 2023]; *Colfin SNP–1 Funding, LLC v Security Natl. Props. Servicing Co., LLC,* 199 AD3d 406, 407 [1st Dept 2021]).

**Rescission against Transformative (Sixth Cause of Action)**

Plaintiffs seek to rescind the foreclosure sale, however, they presumably seek rescission of the note and the CEX Agreement.  In general, rescission of a contract is granted for a breach that is "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract" (*RR Chester, LLC v Arlington Bldg. Corp.*, 22 AD3d 652, 654 [2d Dept 2005] [citation and internal quotation marks omitted]).  The rescission of a contract will lie only where there is no adequate remedy at law and where the status quo may be substantially restored (*Lantau Holdings Ltd. v Gen. Pac. Grp. Ltd.*, 163 AD3d 407, 409 [1st Dept 2018]).

Defendants deny that the status quo can be restored since plaintiffs are incapable of repaying the note as they already defaulted on it.  Moreover, defendants allege that as plaintiffs seek monetary damages, a remedy at law exists.

As plaintiffs do not demonstrate that they do not have an adequate remedy at law, they do not state a claim for rescission.

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**
**Motion No.  006 007 008**

**Page 13 of 18**

13 of 18

**Constructive Trust against all defendants (Seventh Cause of Action)**

The elements of a constructive trust are a confidential or fiduciary relationship, a promise, a transfer in reliance on the promise, and unjust enrichment on the part of the transferee (*Sharp v Kosmalski*, 40 NY2d 119, 121 [1976]).

Plaintiffs seek to impose a constructive trust on the units and any proceeds from the units alleging that a confidential or fiduciary relationship exists between them, on the one hand, and Kamylon and Transformative, on the other hand, "established through the business dealings and agreements, including Kamylon's role as a controlling equity holder, that eventually led FESI and Fallon to agree to the transfer of a security interest or pledge of Transformative units in connection with the Note" (NYSCEF 109, ¶ 126).

However, plaintiff does not demonstrate that the parties were in anything but "an arm's length borrower-lender relationship" (*River Glen Assocs., Ltd. v Merrill Lynch Credit Corp.*, 295 AD2d 274, 275 [1st Dept 2002]). As a constructive trust will not be imposed under those circumstances, the claim is dismissed.

**Motion to seal (motion sequence number 006)**

Defendants move, by order to show cause, (1) to permanently seal the Supplemental Affirmation of Charles T. Lelon in Opposition to Plaintiffs' Application for an Attachment ("Supplemental Lelon Affirmation") (NYSCEF 86) and Exhibit A attached thereto (NYSCEF 87) and to file publicly a version of the Supplemental Lelon Affirmation with the financial information in paragraph 11 redacted; and (2) for a temporary restraining order directing that NYSCEF 86 and 87 will remain under seal pending the hearing on the order to show cause, accessible only to the parties, their counsel, and court personnel. On September 19, 2024, the temporary restraining order issued (NYSCEF 141).

161957/2023 FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL
Motion No. 006 007 008

Page 14 of 18

[* 14]

14 of 18

Defendants move pursuant to Uniform Rules for Trial Courts (22 NYCRR) 216.1, which empowers courts to seal documents upon good cause; it provides in pertinent part:

> Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties.

There is a broad presumption that the public is entitled to have access to judicial proceedings and court records (*Mosallem v Berenson,* 76 AD3d 345, 348 [1st Dept 2010]). The "party seeking to seal court records has the burden to demonstrate compelling circumstances to justify restricting public access" to the documents (*id*. at 349 [citations omitted]). Good cause must "rest on a sound basis or legitimate need to take judicial action" (*Danco Lab Ltd. v Chemical Works of Gedeon Richter, Ltd.*, 274 AD2d 1, 8 [1st Dept 2000] [internal quotation marks omitted]).

NYSCEF 87 is Transformative's 2017 nonpublic unaudited financial statements, including a monthly balance sheet, monthly statement of operations, and a statement of cash flows (NYSCEF 106, moving affirmation). However, defendants withdrew the request to seal this exhibit (NYSCEF 149, ¶ 9), since plaintiffs were able to obtain it from the Massachusetts Department of Public Health in response to a public record request (NYSCEF 148, opposing affirmation).

That leaves the part of the motion to seal NYSCEF 86, which is paragraph 11 of Lelon's supplemental affirmation, containing "nonpublic, confidential financial information" (NYSCEF 106). Paragraph 11 of the Supplemental Lelon Affirmation (NYSCEF 86) addresses defendants' method for setting the minimum bid of $450,000 for the collateral at the auction, and the proposed redacted items are the total value of Transformative's 2024 balance sheet, the

**161957/2023  FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**
**Motion No.  006 007 008**

**Page 15 of 18**

15 of 18

[* 15]

outstanding preferred equity in Transformative, total common equity, the percentage of total common equity to which FESI was entitled, and the total value of the FESI units at the time of the auction (NYSCEF 150, redacted version). Defendants' counsel states that this information is nonpublic and confidential (NYSCEF 106).

Good cause exists where the documents sought to be sealed will disclose confidential or proprietary information, the public disclosure of which would cause harm, and where there is no overriding public interest in disclosure of the documents (*Mavel, a.s. v Rye Dev., LLC,* 79 Misc 3d 1231[A], 2023 NY Slip Op 50758[U], *3-4 [Sup Ct, NY County 2023]). In the business context, courts permit records to be sealed when trade secrets are involved or when the disclosure of information "could threaten a business's competitive advantage" (*Mosallem*, 76 AD3d at 350-351). Sealing has been allowed to preserve the confidentiality of records concerning the internal finances of a party which are of minimal public interest (*see D'Amour v Ohrenstein & Brown, LLP,* 17 Misc 3d 1130[A], 2007 NY Slip Op 52207[U] [Sup Ct, NY County 2007]), and in the absence of "any legitimate public concern," where a business's partners and clients wish to keep their financial arrangements private (*Dawson v White & Case,* 184 AD2d 246, 247 [1st Dept 1992] [internal quotation marks and citation omitted]).

Here, while defendants demonstrate that there is no legitimate public concern in Transformative's financial information, they do not establish that disclosure could cause any harm to Transformative and its stakeholders or that the information contains trade secrets or would threaten Transformative's competitive advantage.

**Motion to consolidate actions (motion sequence number 008)**

Defendants move, pursuant to CPLR 602(a), to consolidate for all purposes including

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**
**Motion No. 006 007 008**

**Page 16 of 18**

16 of 18

joint discovery and trial the instant action with the action titled Transformative Healthcare, LLC v. FESI Holdings. Inc et al., Index No. 655010/2024, in which Transformative seeks to recover the amount still owing on the note.  As plaintiffs assent to the consolidation (NYSCEF 162), and it appears that the actions involve common question of law and fact, the motion is granted.

**Conclusion**

It is hereby

ORDERED that defendants' motion to permanently seal certain records (motion sequence number 006) is denied; and it is further

ORDERED that defendants' motion to dismiss the second amended complaint (motion sequence number 007) is granted to the extent that the second cause of action for breach of contract, the fourth cause of action for conversion, the sixth cause of action for rescission, and the seventh cause of action for a constructive trust are dismissed, and the fifth cause of action is dismissed only to the extent of dismissing the demand for a declaratory judgment, and the motion is otherwise denied; and it is further

ORDERED that defendants shall answer the second amended complaint within 30 days of receipt of this decision, and it is further

ORDERED that defendants' motion to consolidate the above captioned action with another action, *Transformative Healthcare, LLC v FESI Holdings. Inc. et al*., Index No. 655010/2024, commenced in this court (motion sequence number 008), for joint discovery and trial is granted; and it is further

ORDERED that the above-captioned action shall be jointly tried with *Transformative Healthcare, LLC v FESI Holdings. Inc. et al.,* Index No. 655010/2024, pending in this court; and it is further

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**
**Motion No.  006 007 008**

**Page 17 of 18**

17 of 18

ORDERED that upon payment of the appropriate calendar fees and the filing of notes of issue and statements of readiness in each of the above actions, the Clerk of the Trial Support Office shall place the aforesaid actions upon the trial calendar for a joint trial; and it is further

ORDERED that at same joint trial, plaintiffs in the instant action shall have the right to open and close before the jury; and it is further

ORDERED as no answer has yet been filed in the other action as a motion to dismiss is pending, the parties in the joined actions shall appear for a preliminary conference on September 2, 2025 at 9:30 am, at 71 Thomas Street, Room 305, New York, New York.

20250515140421DBCOHENA322ACE40709402E9C89F4EE292BE9D3

| 5/15/2025 | | | | | |
|-----------|--|--|--|--|--|
| **DATE** | | | | **DAVID B. COHEN, J.S.C.** | |
| **CHECK ONE:** | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | | GRANTED | ☐ DENIED | X | GRANTED IN PART | ☐ OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**161957/2023   FESI HOLDINGS, INC. ET AL vs. KAMYLON HOLDINGS, LLC ET AL**          **Page 18 of 18**
Motion No.  006 007 008

18 of 18